UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEFAN PASSANTINO,<br>c/o Binnall Law Group<br>717 King Street, Suite 200<br>Alexandria, Virginia 22314,<br><br>    *Plaintiff*,<br><br>v.<br><br>ANDREW WEISSMANN,<br>39 North Moore Street, Apt. 6B<br>New York, New York, 10013,<br><br>    *Defendant*. | Case No.: _____<br><br><u>DEMAND FOR A JURY TRIAL</u> |

## <u>COMPLAINT</u>

1. Stefan Passantino is an attorney with a 30-year history of representing his clients honorably and ethically and, like all attorneys, depends upon his reputation to earn a living. Defendant Andrew Weissmann—a partisan former-prosecutor and top deputy to Special Counsel Robert Mueller turned MSNBC "legal analyst"—has publicly impugned that reputation, claiming that Mr. Passantino coached his client, Cassidy Hutchinson, to lie in congressional testimony. This is an insidious lie. Mr. Passantino never coached Ms. Hutchinson to lie, nor did he attempt to shape her testimony in any way. Ms. Hutchinson even testified, under penalty of law: "I want to make this clear to you: Stefan [Passantino] never told me to lie. . . . He told me not to lie." Defendant was aware of this testimony, but still chose to smear Mr. Passantino in advancement of his newfound career as a partisan political pundit.

## PARTIES AND JURISDICTION

2. Plaintiff Stefan Passantino is an individual who is a citizen of the State of Georgia, who regularly represents clients in Washington, D.C. as an attorney.

3. Defendant Andrew Weissmann is an individual who is a citizen of the State of New York.

4. This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship, and the amount in controversy exceeds $75,000.

## FACTUAL BACKGROUND

5. Throughout his 30-year career, Mr. Passantino has fostered a reputation as an ethical, honorable lawyer who represents his clients fully consistent with his legal and ethical obligations. Mr. Passantino has successfully represented both some of the highest profile individuals and entities in the world, and some of the least fortunate and desperate among us.

6. In 2017 through 2018, Mr. Passantino served as a senior lawyer in the Trump administration. Since then, he has been in private practice.

7. In 2022, Mr. Passantino represented several witnesses before the United States House Select Committee on the January 6th Attack on the United States Capitol (the "Select Committee"), including Cassidy Hutchinson. Just like every one of his clients, Mr. Passantino represented Ms. Hutchinson honorably, ethically, fully consistent with his legal and ethical obligations, and fully consistent with her sole interests as expressed to him by Ms. Hutchinson.

8. Prior to the allegations made surrounding Ms. Hutchinson, Mr. Passantino has never been accused by a client, or anyone else, of unethical or illegal behavior.

9. Mr. Passantino represented Ms. Hutchinson before the Select Committee at three depositions—February 23, 2022,[1] March 7, 2022,[2] and May 17, 2022.[3] The transcripts of her testimony, including all participation by Mr. Passantino, are publicly available, as shown in the footnotes below.

10. Any review of these readily available transcripts makes it obvious that Mr. Passantino was not attempting to obstruct or shape Ms. Hutchinson's testimony in any way. To the contrary, those 523 pages of testimony make clear that Mr. Passantino's *only* intervention into Ms. Hutchinson's testimony were consistent with his admonitions to her to be honest, not to speculate, and to honor the specific question posed to her to the best of her current recollection. The substance of Ms.

---

[1] *Testimony of Cassidy Hutchinson Before Members of the H. Select Comm. to Investigate the Jan. 6th Attack on the United States Capitol*, 117th Cong. (Feb. 23, 2022), *available at* https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000050113/pdf/GPO-J6-TRANSCRIPT-CTRL0000050113.pdf.

[2] *Testimony of Cassidy Hutchinson Before Members of the H. Select Comm. to Investigate the Jan. 6th Attack on the United States Capitol*, 117th Cong. (Mar. 7, 2022), *available at* https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000051189/pdf/GPO-J6-TRANSCRIPT-CTRL0000051189.pdf.

[3] *Testimony of Cassidy Hutchinson Before Members of the H. Select Comm. to Investigate the Jan. 6th Attack on the United States Capitol*, 117th Cong. (May 17, 2022), *available at* https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000930041/pdf/GPO-J6-TRANSCRIPT-CTRL0000930041.pdf.

Hutchinson's testimony was entirely her own, unfettered, and in response to the questions asked by the Select Committee.

11. As was readily apparent to Defendant, and anyone else reading those publicly available transcripts, Mr. Passantino never instructed Ms. Hutchinson not to answer any of the Select Committee's questions and never made any effort to shape the substance of her response. In fact, the Committee repeatedly thanked Mr. Passantino for his clarifying questions and for keeping Ms. Hutchinson on track during her interviews.

12. The Select Committee videotaped these depositions in full, which also would have demonstrated Mr. Passantino's ethical representation of Ms. Hutchinson. Unfortunately, the Select Committee selectively edited these videos for use in their televised hearings, and upon information and belief the Select Committee, or others working on its behalf, caused the full videos to be destroyed before House Speaker Kevin McCarthy and the Republican Party assumed control of all Congressional records.

13. In contemporaneous text messages to a close friend, attached as **Exhibits A, B, and C**, Ms. Hutchinson has admitted that while she did not want to cooperate with the Select Committee, Mr. Passantino encouraged her to do so:





5

14. Ms. Hutchinson's text messages make clear that she was planning independent leaks of information to major media outlets to make sure it was "[her] narrative that's out there first" without the knowledge of Mr. Passantino.

15. These texts were also consistent with a prior text exchange, which had been reported by the Daily Caller in July 2022, where Ms. Hutchinson expressed contempt for the Select Committee[4]:



---

[4] Henry Rodgers, *EXCLUSIVE: Text Messages Show Cassidy Hutchinson Referring to January 6 Committee as 'BS'*, DAILY CALLER (Jul. 3, 2022), https://dailycaller.com/2022/07/03/obtained-text-message-cassidy-hutchinson-called-january-6-committee-bs-before-testifying/.

16. On September 14, 2022, Ms. Hutchinson testified for a fourth time before the Select Committee, this time with new counsel as she was no longer represented by Mr. Passantino, and she said, "I want to make this clear to you: Stefan never told me to lie."[5]

17. Ms. Hutchinson continued, "I just want to make sure that I make it clear that he didn't say, 'I want you to lie and say that you don't recall on these things when I know you recall.'"[6] And she said again, "he didn't tell me to lie. *He told me not to lie.*"[7]

18. Despite all of this, a year and a day later, September 15, 2023, Defendant—a partisan who takes every opportunity to attack anyone associated with President Trump—tweeted to his approximately 320,000 followers on X (formerly, Twitter) that Mr. Passantino "coached [Cassidy Hutchinson] to lie":[8]



**Andrew Weissmann (weissmann11 on Threads)🌻**
@AWeissmann_

Hunt also is Cassidy Hutchinson's good lawyer. (Not the one who coached her to lie) And he is the guy who took notes of Trump saying, when Mueller was appointed, quoting him as saying "I'm f....d"

---

[5] *Testimony of Cassidy Hutchinson Before the H. Select Comm. to Investigate the Jan. 6th Attach on the United States Capitol*, 117th Cong., at 42:11 (Sept. 14, 2022), *available at* https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000928888/pdf/GPO-J6-TRANSCRIPT-CTRL0000928888.pdf.

[6] *Id.* at 42:17–18.

[7] *Id.* at 42:20–21 (emphasis added).

[8] Andrew Weissmann (@AWeissmann_), X (Sept. 15, 2023, at 3:18 p.m.), https://twitter.com/AWeissmann_/status/1702763825097748795.

7

19. Defendant knew this to be false, or said it with reckless disregard for its falsity, because the transcripts of testimony showed that Mr. Passantino had done nothing to obstruct or shape Ms. Hutchinson's testimony and indeed showed the opposite as she stated that "Stefan never told me to lie" and that "he told me not to lie."

20. Defendant chose to smear Mr. Passantino because of partisan animus and Mr. Passantino's prior affiliation with President Trump. Additionally, Defendant attacked Mr. Passantino as a means of distracting from and rehabilitating the contradictory and uncredible aspects of Ms. Hutchinson's testimony, as they undermine the Select Committee and its partisan findings and purpose.

21. Defendant's smear has deeply damaged Mr. Passantino's 30-year reputation and had caused him to lose significant business and income. Mr. Passantino seeks to hold Defendant accountable for this vicious lie and the damages it has wrought.

CAUSES OF ACTION
COUNT I
(Defamation and Defamation *Per Se*)

22. Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

23. On September 15, 2023, Defendant defamed Mr. Passantino by stating that Mr. Passantino "coached [Cassidy Hutchinson] to lie."

24. Defendant's statement is of and concerning Mr. Passantino because the context of the statement was meant to and is reasonably read to be about Mr. Passantino.

25. Defendant's statement is categorically false.

26. Defendant published the statement on X (formerly, Twitter), where he has approximately 322,000 followers, including residents of DC. Defendant's tweet can be interacted with and viewed by residents of DC. As of today, the statement has been viewed by approximately 116,000 people, including residents of DC.

27. Given the publicly available transcripts of Ms. Hutchinson's testimony, Mr. Passantino's obvious cooperation with the Select Committee, and Ms. Hutchinson's statements that Mr. Passantino did *not* tell her to lie, and in fact told her to tell the truth and to cooperate, Defendant knew that his statement was false, or he recklessly disregarded its falsity, and therefore published the statement with actual malice. At the very least, Defendant should have known with ordinary care that his statement was false, and therefore published the statement negligently.

28. Defendant's statement is defamatory as it injures Mr. Passantino in his reputation, his profession as a lawyer, and in his community standing. The claim that Mr. Passantino—a 30-year practitioner of law with a reputation for ethics—would suborn perjury in congressional testimony, exposes him to hatred and contempt, and induces an unsavory opinion in the minds of members of the community.

29. Defendant's statement is defamatory *per se* because it accuses Mr. Passantino of suborning perjury, a serious crime for which he could be indicted and

9

punished, and involves moral turpitude. Moreover, the statement accuses Mr. Passantino of a gross violation of an attorney's ethical and professional obligations and deeply injures him in his profession.

30. The defamatory statement has directly and proximately caused Mr. Passantino to suffer significant damages in Washington D.C. and Georgia, where he does business, including loss of business and income, damage to his reputation, humiliation, embarrassment, and mental anguish, all of which are ongoing in nature and will be suffered in the future. These damages were foreseeable to Defendant.

31. Defendant published the defamatory statement knowingly, intentionally, willfully, wantonly, and maliciously, with intent to harm Mr. Passantino, or in blatant disregard for the substantial likelihood of causing him harm, thereby entitling Mr. Passantino to an award of punitive damages.

32. As a direct and proximate result of the misconduct of Defendant, Mr. Passantino is entitled to compensatory, special, and punitive damages, in excess of $75,000.

## COUNT II
### (Injurious Falsehood)

33. Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

34. Mr. Passantino is engaged in the practice of law as an attorney.

35. Defendant's false statement, accusing Mr. Passantino of coaching a client to lie, directly concerns Mr. Passantino's business.

10

36. Defendant intended for his false statement to destroy Mr. Passantino's reputation, to ruin his ability to participate in practicing law and to harm him financially. Defendant reasonably recognized and intended that the publication of his statement about Mr. Passantino would result in pecuniary losses.

37. Mr. Passantino has suffered direct pecuniary losses as a result of Defendant's accusation, including costs associated with lost business opportunities and money spent to defend his own reputation, in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stefan Passantino respectfully requests this Court enter a judgment in his favor and grant relief against Defendant as follows:

a. An award of compensatory, special, and punitive damages in an amount to be determined by a jury, but in excess of $75,000;

b. An award of Plaintiff's costs associated with this action;

c. An award of pre- and post-judgment interest; and

d. Such other and further relief as the Court deems just and appropriate to protect Plaintiff's rights and interests.

## Demand for Jury Trial

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 22, 2023

STEFAN PASSANTINO
*By Counsel*

Respectfully submitted,

/s/ *Jesse R. Binnall*
Jesse R. Binnall, DDC Bar No. VA022
Jason C. Greaves, DDC Bar No. 1033617
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jesse@binnall.com
       jason@binnall.com

*Counsel for Plaintiff*