UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEFAN PASSANTINO,

      *Plaintiff,*

v.

ANDREW WEISSMANN,

      *Defendant.*

Case No.: 1:23-cv-02780-LLA

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

BACKGROUND ........................................................................................................... 1

LEGAL STANDARDS ................................................................................................. 3

ARGUMENT ................................................................................................................. 4

    I.    Defendant's post was not opinion. ........................................................................ 4

        a.  The common usage and meaning of the specific language indicate an
            accusation of a crime, which has a well-defined meaning. ......................... 6
        b.  The statement is verifiable. ...................................................................... 9
        c.  The context of the Tweet shows that Defendant intended a factual
            implication. .............................................................................................. 12
        d.  The broader social context of the Tweet does not render it protected
            opinion. .................................................................................................... 15

    II.   Defendant's post was defamatory. ..................................................................... 18

        a.  The statement is false and defamatory. .................................................... 18
        b.  The statement was published with negligence and actual malice. ........... 21
        c.  Mr. Passantino suffered actual and legal harm. ...................................... 21

    III.  Mr. Passantino Properly Pled Injurious Falsehood. ......................................... 22

CONCLUSION ............................................................................................................ 23

CERTIFICATE OF SERVICE ................................................................................... 24

# TABLE OF AUTHORITIES

### Cases

*ADT LLC v. Vivant Smart Home, Inc.*,
  No. 20-cv-23391, 2021 WL 4478932 (S.D. Fla. Sept. 30, 2021) ............................ 23

*Armstrong v. Thompson*,
  80 A.3d 177 (D.C. 2013) ........................................................................................ 4

*Ayissi–Etoh v. Fannie Mae*,
  712 F.3d 572 (D.C. Cir.2013) ................................................................................. 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 4

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
  151 F. Supp. 3d 287 (E.D.N.Y. 2015) ................................................................... 16

*Broughty v. Bouzy*,
  No. CV226458SDWJRA, 2023 WL 5013654 (D.N.J. Aug. 7, 2023) ................. 15, 16

*Burns v. McGraw-Hill Broadcasting Co.*,
  659 P.2d 1351 (Colo. 1983) ................................................................................... 14

*Competitive Enterprise Institute v. Mann*,
  150 A.3d 1213 (D.C. Cir. 2016) .............................................................................. 8

*Day v. McDonough*,
  547 U.S. 198 (2006) .......................................................................................... 19, 21

*Doe #1 v. American Federation of Govt. Employees*,
  554 F. Supp. 3d 75 (D.D.C. 2021) ........................................................................ 22

*Farah v. Esquire Mag.*,
  736 F.3d 528 (D.C. Cir. 2013) .......................................................................... 3, 17

*Froess v. Bulman*,
  610 F. Supp. 332 (D.R.I.1984) .............................................................................. 12

*Golden v. Mgmt. & Training Corp.*,
  319 F. Supp. 3d 358 (D.D.C. 2018)................................................................... 19, 21

*Goodrich v. Waterbury Republican-American*,
  448 A.2d 1317 (1982) ............................................................................................ 11

*Holy Land Found. for Relief & Dev. v. Ashcroft,*
    333 F.3d 156 (D.C. Cir. 2003)................................................................. 3, 8

*Hotchner v. Castillo-Puche,*
    551 F.2d 910 (2d Cir. 1977) ................................................................. 11

*Information Control Corp. v. Genesis One Computer Corp.,*
    611 F.2d 781 (9th Cir.1980) ................................................................. 12

*Klayman v. Segal,*
    783 A.2d 607 (D.C. 2001) ................................................................. 18

*Liberty Lobby, Inc. v. Dow Jones Co., Inc.,*
    838 F.2d 1287 (D.C. Cir. 1988)................................................................. 19

*Masson v. New Yorker Magazine, Inc.,*
    501 U.S. 496 (1991)................................................................. 18

*Milkovich v. Lorain Journal Co.,*
    497 U.S. 1 (1990)................................................................. 4, 15

*Moldea v. New York Times Co.,*
    22 F.3d 310 (D.C. Cir. 1994)................................................................. 5, 6

*Myers v. Plan Takoma, Inc.,*
    472 A.2d 44 (D.C. 1983) ................................................................. 12

*Ollman v. Evans,*
    750 F.2d 970 (D.C. Cir. 1984)........................................... 4, 5, 6, 9, 10, 11, 12, 13, 14

*Packingham v. North Carolina,*
    582 U.S. 98 (2017)................................................................. 16

*Rinaldi v. Holt, Rinehart & Winston, Inc.,*
    42 N.Y.2d 1299, *cert. denied,* 434 U.S. 969 (1977)................................. 9

*Shipkovitz v. Wash. Post. Co.,*
    408 Fed. App'x 376 (D.C. Cir. 2010) ................................................................. 18

*Sigal Const. Corp. v. Stanbury,*
    586 A.2d 1204 (D.C. 1991)................................................................. 5, 12, 13

*Smith v. McMullen,*
    589 F. Supp. 642 (S.D. Tex.1984)................................................................. 12

*Steele v. United States,*
    657 F. Supp. 3d 23 (D.D.C. 2023)................................................................. 19, 21

*Washington v. Smith*,
   893 F. Supp. 60 (D.D.C. 1995) ................................................................. 14

*Weyrich v. New Republic, Inc.*,
   235 F.3d 617 (D.C. Cir. 2001) ............................................................... 4, 19

*White v. Fraternal Order of the Police*,
   909 F.2d 512 (D.C. Cir. 1990) ................................................................. 19

*Young v. United States*,
   212 F.2d 236 (D.C. Cir. 1954) ................................................................... 6

### Statutes

18 U.S.C. § 1001 ............................................................................................ 6

18 U.S.C. § 1622 ............................................................................................ 6

### Other Authorities

Andrew Weissmann (@AWeissmann_), X, https://twitter.com/AWeissmann (last
   visited Mar. 21, 2024). ............................................................................. 16

DISTRICT OF COLUMBIA OFFICE OF DISCIPLINARY COUNSEL (Feb. 2, 2024),
   https://static01.nyt.com/newsgraphics/documenttools/c3f8da0e4bae8a90/7ffb8cdb-
   full.pdf ..................................................................................................... 8

*Ethics Complaint against Stefan Passantino*, LAWYERS DEFENDING AMERICAN
   DEMOCRACY, 15 (Mar. 6, 2023), https://ldad.org/wp-
   content/uploads/2023/03/Ethics-Complaint-against-Stefan-Passantino.pdf ......... 10

STATE BAR OF GEORGIA STATE DISCIPLINARY BOARD (Feb. 26, 2024),
   https://static01.nyt.com/newsgraphics/documenttools/37252e37ec21f5dd/b30b04b3
   -full.pdf ..................................................................................................... 8

### Rules

Federal Rule of Civil Procedure 9 .................................................................. 22

Defendant—a former federal prosecutor—believes he can safely accuse another lawyer of suborning perjury, so long as he does it pithily on Twitter. This is not and cannot be the law for internet defamation. A character limit does not immunize the spreading of lies. And as much as Defendant wants this Court to believe that whether someone *coached a witness to lie* is simply a matter of opinion, any number of state bars and prosecutors would beg to differ.

The accusation that Mr. Passantino coached his client to lie is most definitely not opinion. It is an assertion of fact. It has a definitively derogatory meaning and alleges the commission of a felony. This Court should firmly reject Defendant's blasé attitude toward baseless accusations of criminal actions, particularly where the Defendant is a former federal prosecutor and well aware of the legal import of his allegations. Because Defendant's statement expressed or implied the false claim that Mr. Passantino suborned perjury, this Court must deny the motion to dismiss.

## BACKGROUND

Stefan Passantino has been an attorney for over 30 years. In that time, he has consistently fostered a reputation as an ethical, honorable lawyer who represents his clients fully consistent with his legal and ethical obligations. Dkt. No. 1 at ¶ 2. Before moving into private practice, Mr. Passantino served as a senior lawyer in the Trump administration between 2017 and 2018. *Id.* at ¶ 2.

In 2022, Mr. Passantino represented several witnesses before the United States House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Select Committee"), including Cassidy Hutchinson. *Id.* at ¶ 3. As

with all his clients, Mr. Passantino represented Ms. Hutchinson honorably, ethically, fully compliant with his legal and ethical obligations, and fully consistent with Ms. Hutchinson's sole interests as expressed to him by her. *Id.* Mr. Passantino represented Ms. Hutchinson before the Select Committee during three depositions—February 23, 2022, March 7, 2022, and May 17, 2022. *Id.* at ¶ 5. The transcripts of each are publicly available. *Id.*

A quick review of these readily available transcripts makes it obvious that Mr. Passantino was not attempting to obstruct or shape Ms. Hutchinson's testimony in any way. *Id.* at ¶ 6. He especially did not attempt to get Ms. Hutchinson to lie. As the transcripts show, Mr. Passantino never instructed Ms. Hutchinson not to answer any of the Select Committee's questions and never made any effort to shape the substance of her responses. *Id.* at ¶ 7. The Committee repeatedly thanked Mr. Passantino for his clarifying questions and for keeping Ms. Hutchinson on track during her interviews. *Id.* In fact, Ms. Hutchinson did not want to comply. *Id.* at ¶ 9. Mr. Passantino, however, encouraged her to comply. *Id.*

On September 14, 2022, Ms. Hutchinson testified for a fourth time before the Select Committee, this time with new counsel because she was no longer represented by Mr. Passantino. She rightly said on the record, "I want to make this clear to you: Stefan never told me to lie." *Id.* at ¶ 12. Ms. Hutchinson continued, "I just want to make sure that I make it clear that he didn't say, 'I want you to lie and say that you don't recall on these things when I know you recall.'" *Id.* at ¶ 13. She reiterated that, "he didn't tell me to lie. *He told me not to lie.*" *Id.*

Despite all of this, a year and a day later, on September 15, 2023, Defendant posted on X (formerly Twitter) that Mr. Passantino "coached [Cassidy Hutchinson] to lie." *Id.* at ¶ 14. Defendant knew this to be false, or said it with reckless disregard for its falsity. The transcripts of Ms. Hutchinson's testimonies showed that Mr. Passantino had not taken any action to get Ms. Hutchinson "to lie." *Id.* at ¶ 15. Instead, the testimony was exactly to the contrary by virtue of Ms. Hutchinson's statements that "Stefan never told me to lie" and that "he told me not to lie." *Id.* Accordingly, Mr. Passantino brought this lawsuit to hold Defendant accountable for his malicious and knowing lie.

## LEGAL STANDARDS

To meet the requirements for defamation under District of Columbia law, a plaintiff must prove that (1) the plaintiff was the subject of a false and defamatory statement; (2) the statement was published to a third party; (3) publishing the statement was at least negligent; and (4) the plaintiff suffered either actual or legal harm. *Farah v. Esquire Mag.*, 736 F.3d 528, 533–34 (D.C. Cir. 2013) (citing *Ayissi–Etoh v. Fannie Mae,* 712 F.3d 572, 578 (D.C. Cir.2013).

In considering a motion under Federal Rule of Civil Procedure 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (internal quotation omitted). While the Court accepts well-pleaded facts in the complaint as

true, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"[A] complaint . . . does not need detailed factual allegations," but "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations and citations omitted). The claim to relief must be "plausible on its face," and a plaintiff's pleadings need only "nudge[ the] claims across the line from conceivable to plausible." *Id.* at 570.

## ARGUMENT

### I.   Defendant's post was not opinion.

Defendant relies solely on the argument that his statement is an opinion and therefore non-actionable. Defendant admits, as he must, that the law of defamation applies where there is "an explicit or implicit factual foundation" rendering the statement to be "objectively verifiable." Dkt. No. 7.1 at 19-20 (citing *Armstrong v. Thompson,* 80 A.3d 177, 184 (D.C. 2013) (citation omitted); accord *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001) ("For a statement to be actionable under the First Amendment, it must at a minimum express or imply a verifiably false fact about [the plaintiff]." (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–20 (1990)). Therefore, the only issue before this Court is whether the Complaint plausibly alleges an explicit or implicit factual basis in Defendant's statement.

In *Ollman v. Evans*, 750 F.2d 970, 981 (D.C. Cir. 1984), the D.C. Circuit outlined a four-factor test to determine whether a statement is factual or a protected

4

opinion. Likewise, in *Sigal Const. Corp. v. Stanbury*, 586 A.2d 1204, 1210 (D.C. 1991), the D.C. Court of Appeals put forth another four-part test for considering this issue. Although D.C. law controls, and the *Sigal* test is appropriate to consider, it was applied by the D.C. Court of Appeals in deciding an issue on appeal *after* a trial on the merits, limiting its direct application here, on a motion to dismiss. The court should therefore apply the factors set forth in *Ollman* and consider *Sigal* as persuasive, nonbinding authority to inform *Ollman* where needed.

Under the *Ollman* factors, a court should: (1) analyze the common usage or meaning of the challenged statement itself; (2) consider the degree to which the statements are verifiable; (3) examine the context in which the statement occurs; and (4) examine "the broader social context into which the statement fits. *Ollman v. Evans*, 750 F.2d 970, 1016 (D.C. Cir. 1984).

Despite Defendant's vague arguments, the D.C. Circuit has not instructed courts to generally err on the side of non-actionability. *See* Dkt. No. 7.1 at 20. Rather, the D.C. Circuit stated that "[w]here the question of truth or falsity *is a close one*, a court should err on the side of nonactionability." *Moldea v. New York Times Co.*, 22 F.3d 310, 317 (D.C. Cir. 1994) (citations omitted) (emphasis added). Defendant has not argued truth as a defense in this motion, only that his statement was an opinion. Therefore, *Moldea* does not require this Court to err in defendant's favor.

Regardless, this case is distinguishable from *Moldea*. In *Moldea*, the D.C. Circuit stated that context is critical to determine whether a statement is factual or an opinion. *Id.* at 311. In *Moldea*, the defendant's statement appeared as part of a

book review. *Id.* at 311. The plaintiff's allegation that the book contained "too much sloppy journalism," was an opinion. *Id.* The court found that context of a book review is effectively an invitation for statements of opinion, and the statement itself was opinion. *Id.* By contrast, Defendant in this case made an unprompted assertion against Mr. Passantino with no context at all. Defendant did not make his attack on Mr. Passantino to answer anyone's invitation for an opinion. Rather, he maliciously attacked Mr. Passantino's reputation of his own accord.

### a.   The common usage and meaning of the specific language indicate an accusation of a crime, which has a well-defined meaning.

Under *Ollman*, courts are instructed to consider the language used in a statement to determine whether it suggests clear factual implications, or a "well-defined meaning." *See Ollman*, 750 F.2d at 980. Under *Ollman,* "A classic example of a statement with a well-defined meaning is an accusation of a crime." *Id.*

Here, Defendant has alleged that Mr. Passantino *coached a witness to lie* to the United States House Select Committee on the January 6 Attack ("J6 Committee"). Coaching a witness to lie is a crime. *See* 18 U.S.C. § 1622 (Subornation of Perjury). While Defendant attempts to downplay the allegation made in his Tweet, the language is quite simple. 18 U.S.C. § 1622 states "[w]hoever procures another to commit any perjury is guilty of subornation of perjury[.]". Perjury is a knowingly false statement. *See Young v. United States*, 212 F.2d 236, 241 (D.C. Cir. 1954) (defining the two elements of perjury as falsity of testimony and the lack of a belief in its truth). It is also illegal to make false statements to Congress. *See* 18 U.S.C. § 1001.

In his defense to this clear allegation, Defendant argues that other publications described Mr. Passantino's conduct as "coaching," but also notes significant differences in how these other publications tailored their messages. *See* Dkt. No. 7.1 at 14–15 (discussing other publications that alleged that Mr. Passantino coached Mr. Hutchinson "to tell committee investigators during her interviews that she did not recall certain things," or that he "pressur[ed] her to withhold information from lawmakers," or he "aimed at influencing her cooperation with Congress and stifling potentially damaging testimony about [President Trump].". While some of these statements are potentially defamatory in their own right, none of them accuse Mr. Passantino outright—as Defendant did—of coaching his client *to lie*. Indeed, as discussed in more detail below, the specific meaning of Defendant's message is markedly different than the examples provided.

Defendant next argues that bar complaints against Mr. Passantino provide cover because they allege similar conduct. Mr. Passantino, as Plaintiff, however, is not required to sue every individual that has made a tortious remark about him, and Mr. Passantino reserves the right to take any and all legal actions against those that brought bar complaints against him. Importantly, while Defendant points out that the news covered these complaints and their allegations, he does not argue that he relied upon them for his post, which is not protected by the fair report privilege or

any other privilege. Moreover, these investigations have now concluded with the D.C. and Georgia State Bars, with each dismissing those claims.[1]

As a last-ditch effort, Defendant, contrary to well-established First Amendment law, argues that the isolated word "coach" is too subjective to be actionable. *See* Dkt. No. 7.1 at 28–30. This, however, is directly contrary to the First Amendment requirements that this Court review the totality of the statements in their context. *See Competitive Enterprise Institute v. Mann*, 150 A.3d 1213, 1241 (D.C. Cir. 2016). The context surrounding this statement eviscerates Defendant's argument that coaching could be subject to different reasonable interpretations in this case. Moreover, Defendant's subjective intent is entitled to no weight before this Court, particularly at this stage. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (requiring courts, at this stage, to consider the plaintiff's allegations as true and derive all inferences in the plaintiff's favor).

Contrary to Defendant's allegation that he was merely implying that Mr. Passantino was in violation of his ethical duties as a lawyer by coaching a witness, the plain text is that he "coached" a Congressional witness to "lie". There is no ambiguity about what "coached" means in this sense, or that it implies a criminal act.

---

[1] DISTRICT OF COLUMBIA OFFICE OF DISCIPLINARY COUNSEL (Feb. 2, 2024), https://static01.nyt.com/newsgraphics/documenttools/c3f8da0e4bae8a90/7ffb8cdb-full.pdf; STATE BAR OF GEORGIA STATE DISCIPLINARY BOARD (Feb. 26, 2024), https://static01.nyt.com/newsgraphics/documenttools/37252e37ec21f5dd/b30b04b3-full.pdf.

Indeed, the overall context of the statement, as detailed below, is that there was something untoward and criminal about the encouraged action. In addition, the *Ollman* court counseled that even accusations of criminal activity that may be "less well defined" can be actionable. *Ollman*, 750 F.2d at 780. Accusing a judge of "corruption" was held to be actionable as an allegation of a crime. *Id.* (citing *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 1299, 397 N.Y.S.2d 943, 366 N.E.2d 1299, *cert. denied,* 434 U.S. 969 (1977)).

In *Rinaldi*, the New York Court of Appeals considered statements about a judge and determined that they, in their totality, included "strong undertones of conspiracy and illegality" and that an "ordinary and average reader would likely understand the use of these words, in the context of the entire article, as meaning that plaintiff had committed illegal and unethical actions." *Id.* at 382. The *Rinaldi* court concluded that "[a]ccusations of criminal activity, even in the form of opinion, are not constitutionally protected." *Id.* Likewise, Defendant's statements here carry a strong undertone of illegality, and are likely to be understood from both words alone and the context of the tweet to be an allegation of illegal and unethical actions.

       **b.**   **The statement is verifiable.**

The *Ollman* court next asks whether the statement is verifiable, but it also recognizes that "it will often be difficult to assay whether a statement is verifiable." *Ollman*, 750 F.2d at 782. The consideration of whether a statement is verifiable will often be one of degree rather than a simple binary. *Id.*

Defendant argues two issues here: (1) that the word "coaching" is inherently subjective; and (2) that there is no bright line rule regarding when coaching to lie has occurred absent an explicit instruction. Dkt. No. 7.1 at 31–32. Neither of these arguments is persuasive.

First, as noted above, this Court must consider the entire context of the statement, not an isolated word. The statement is verifiable because the underlying factual implication is that Mr. Passantino coached his former client, Ms. Hutchinson, to lie to Congress. Ms. Hutchinson's own statements that Mr. Passantino did *not* tell her to lie indicate that this implication is verifiably false. So too does the fact that the D.C. bar dismissed a complaint against Mr. Passantino that included the same allegation.[2]

This statement and its factual connotation can be probed by discovery into Mr. Passantino's advice to the extent that Ms. Hutchinson waives attorney-client privilege, which would allow it to be verified. Indeed, Ms. Hutchinson has already waived privilege for her testimony to the Committee.

Defendant's argument suggests that a single word can derail a highly factual inquiry of whether Mr. Passantino coached Ms. Hutchinson to lie. This question of fact is critical to the entire case. Because it is a critical question of fact, it must go

---

[2] *See Ethics Complaint against Stefan Passantino*, LAWYERS DEFENDING AMERICAN DEMOCRACY, 15 (Mar. 6, 2023), https://ldad.org/wp-content/uploads/2023/03/Ethics-Complaint-against-Stefan-Passantino.pdf.

before a jury. Therefore, the Court should overrule this motion to dismiss and allow this case to be heard on the merits.

Moreover, the *Ollman* court boiled this question down to "is the statement objectively capable of proof or disproof?" *Ollman*, 750 F.2d at 981 (citing *Goodrich v. Waterbury Republican-American,* 448 A.2d 1317, 1319 (1982); *Hotchner v. Castillo-Puche,* 551 F.2d 910, 913 (2d Cir. 1977)). The D.C. Circuit went on to suggest that "[t]rial judges have rich experience in the ways and means of proof and so will be particularly well situated to determine what can be proven." *Id.* at 982.

As noted, there are discovery mechanisms for identifying the advice given and the answers given to determine whether any coaching to lie occurred. Of course, an integral starting point is Ms. Hutchinson's previous testimony (that she was specifically told not to lie) because that statement directly weighs against any evidence that she was coached to lie. This type of weighing of the facts is for summary judgment and a jury, not this Court on motion to dismiss. This is particularly true here where it is issue of the degree to which the statement can be verified.

Finally, the findings of the D.C. and Georgia State Bar organizations contradict and defeat Defendant's argument. These entities were tasked with making such a determination, on claims the Defendant admitted are similar, and dismissed each without discipline. Indeed, there are means and methods that would allow for the proof or disproof of Defendant's statement. Therefore, this statement is verifiable.

### c. The context of the Tweet shows that Defendant intended a factual implication.

Both the *Sigal* test and the *Ollman* factors direct this Court to consider the context of the entire statement made by the Defendant. This inquiry is broader than the first *Ollman* factor, which looks at only the specific words in the statement. In this factor, this Court should look at the totality of the circumstances and the statements "must be viewed in their totality, not as isolated phrases or words." *Sigal Const. Corp. v. Stanbury*, 586 A.2d 1204, 1210 (D.C. 1991) (citing *Myers v. Plan Takoma, Inc.*, 472 A.2d 44, 47 (D.C. 1983); *Smith v. McMullen,* 589 F. Supp. 642, 645 (S.D. Tex. 1984); *Information Control Corp. v. Genesis One Computer Corp.,* 611 F.2d 781, 784 (9th Cir. 1980); *Froess v. Bulman,* 610 F. Supp. 332, 340 (D.R.I. 1984). *See also Ollman*, 750 F.2d at 982 ("The degree to which a statement is 'laden with factual content' or can be read to imply facts depends upon the article or column, taken as a whole, of which the statement is a part.") (citing *Information Control v. Genesis One Computer,* 611 F.2d at 783)). While this inquiry does look to the entirety of the context of the statements, "the context to be considered is both narrowly linguistic and broadly social." *Ollman*, 750 F.2d at 982.

The context of the post's language itself is a short inquiry. The Defendant admits that the post consists of 36 total words: "Hunt also is Cassidy Hutchinson's good lawyer. (Not the one who coached her to lie) And he is the guy who took notes of Trump saying, when Mueller was appointed, quoting him as saying 'I'm f....d'". *See* Dkt. No. 1 at ¶ 18.

12

In applying this part of the *Sigal* test, the D.C. Court of Appeals looked at the plain language of the entire statement and considered (1) the context of the statement, (2) how the audience of the statement was likely to interpret the statement, and (3) if there were additional factual statements alongside the alleged defamatory statement. *Sigal,* 586 A.2d at 1211. This matches up with First Amendment caselaw requiring a similar inquiry. *See Ollman*, 750 F.2d at 982–83.

Applying this to the post at hand, the context is an unprompted, online post by a former high-ranking government employee and federal prosecutor commenting publicly about two other high-ranking government employees and lawyers. Despite Defendant's attempts to paint this post otherwise, it is a comparison of lawyers and their actions, which could be opinion or factual.

The contents, however, demonstrate that Defendant chose to define one attorney by opinion, and then contrast them with false allegations of fact about the other lawyer's conduct. While Defendant's statement that Mr. Hunt is a "good" lawyer is obviously an opinion, Defendant did more than opine that Mr. Passantino is a "bad" or "not good" attorney by comparison. Rather, Defendant asserted that Mr. Passantino is the lawyer that "coached [his former client] to lie" and then went on to include a fact about Mr. Hunt, as a contrast to the factual assertion about Mr. Passantino, taking notes during a conversation with President Trump.

Defendant's argument that the first opinion statement about Mr. Hunt being a "good" lawyer should control the following factual statements deserves no weight at this stage of the proceedings. The context more plausibly suggests that the statement

13

about Mr. Passantino is an actionable statement of fact. First, the entire post consists of a statement of opinion followed by two statements of fact, one about Mr. Passantino and one about Mr. Hunt. The context of the factual statement about Mr. Hunt strongly implies that Defendant's statement about Mr. Passantino is also factual. A reasonable viewer of the post is likely to read it in this way.

Moreover, the lack of inclusion of any cautionary language explaining that the statement is merely the Defendant's opinion cuts against the statement being a protected expression of opinion. *See Ollman*, 750 F.2d at 983. This is because "when the reasonable reader encounters cautionary language, he tends to 'discount that which follows.'" *Id* (citing *Burns v. McGraw-Hill Broadcasting Co.*, 659 P.2d 1351, 1360 (Colo. 1983)).

Further, even if Defendant's statement was opinion, it is not protected because the "opinion" implies that it is based on undisclosed facts. *Washington v. Smith*, 893 F. Supp. 60, 63 (D.D.C. 1995). In *Smith*, this Court agreed with the plaintiff that the defendant's statement that the plaintiff "usually finds a way to screw things up," implied underlying facts that could make the statement actionable. *Id.* In *Ollman*, the D.C. Circuit held that if an opinion implies the existence of undisclosed facts, "it should not receive the benefit of First Amendment protection as an opinion." *Ollman*, 750 F.2d at 984. As the Supreme Court noted, "[i]f a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth . . . . Simply couching such statements in terms of opinion does not dispel these implications." *Milkovich*, 497 U.S. at 18–19. Accordingly, while

14

Defendant now self-servingly seeks to rely on additional context to argue his statement was opinion, he did not disclose any of this information to his viewers at the time he made his defamatory remark, removing the statement from the realm of protection on the basis of opinion.

> ### d.    The broader social context of the Tweet does not render it protected opinion.

The final *Ollman* factor asks this Court to consider the broader social context of the statement because where the statement is published can have an impact on the analysis. Here, Defendant posted his statement on X, which he suggests makes it more likely to be protected opinion rather than a defamatory statement or implication of fact. This, however, would inappropriately shortcut the analysis required by this Court.

The Southern District of New York has indicated in dicta that the character-limit on an application like X and the relative informality of internet forums could indicate opinion. *See* Dkt. No. 7.1 at 23. That court did not, however, hold or directly assert that a defendant can avoid scrutiny by posting statements online. *See* Dkt. No. 7.1 at 23. Defendant also points to *Broughty v. Bouzy*, No. CV226458SDWJRA, 2023 WL 5013654 (D.N.J. Aug. 7, 2023), for support, which expressly determined that *New York* courts have generally protected statements made in online forums as statement of opinions in contrast to those made in print media. *Broughty,* 2023 WL 5013654, at *5 (citing *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015)). This statement of New York law, inapplicable here, disregards

that First Amendment law *requires* the same analysis regardless of where a statement is published.

While Defendant seeks to downplay the importance of social media platforms such as X, the Supreme Court has recognized that it is one of the most important places for the exchange of views. *See Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) ("While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general . . . and social media in particular." (citation omitted)). Use of platforms such as X should not provide an automatic defense to defamation. Exactly because cyberspace is "the most important place[] . . . for the exchange of views," users who violate the law to defame others must be held accountable in court. *Packingham,* 582 U.S. at 104.

This is especially true here. Defendant's X profile portrays Defendant as a representative of MSNBC, a lawyer with over 20 years of experience in the Department of Justice, and an accomplished author of a book about federal prosecutions of President Trump.[3] The general public is likely to interpret Defendant's X posts as based in fact and not merely opinion. Indeed, Defendant chose to present to his followers and thousands of other readers that he is an experienced federal prosecutor that comments on the prosecutions of President Trump. Therefore,

---

[3] Andrew Weissmann (@AWeissmann_), X, https://twitter.com/AWeissmann (last visited Mar. 21, 2024).

even on X, Defendant's audience is likely to understand his defamatory statement about Mr. Passantino as a factual statement about criminal activity.

Defendant chiefly relies on *Farah* in his argument about social context. *Farah*, however, is easily distinguishable. There, the D.C. Circuit held that the defendant's statements were protected satire. *Farah*, 736 F.3d at 537. The court reached that decision because the defendant had a customer base to whom it directed the blog and had a history of writing satirical pieces. Therefore, its intended audience would, once again, recognize the subject blog post as satire. *Id.* Here, Defendant does not post satire. He is a former federal prosecutor. People follow him for his analysis of the law, not for satire. Thus, in this case, Defendant's intended audience would reasonably recognize Defendant's defamatory statement as a legal conclusion, implying the existence of facts to support that conclusion, rather than his satirical opinion.

Defendant seeks to leverage X's character limit to excuse his lack of any kind of disclaimer. However, Defendant also admits that he only used 36 words, far below the character limit allowed. The remaining characters could have been used to adequately explain the entire context. Defendant, however, did not want to include all of the details. This lack of context suggests that Defendant wanted to make a sensational accusation against Mr. Passantino. He is now searching for a *post hoc* rationalization for why he chose to accuse Mr. Passantino of illegal and unethical conduct.

Finally, despite Defendant's protestations, a finding that the Complaint plausibly states a claim in this case would not cause others to self-censor or infringe

17

upon any First Amendment protections. *See* Dkt. No. 7.1 at 19–20. No other commentator that Defendant has cited chose to use such dramatic and actionable language. There were myriad ways that Defendant could have commented on Mr. Passantino's representation of Ms. Hutchinson that would not have made a false accusation or implication of suborning perjury. Defendant opted instead for sensationalism. A pithy lie is still a lie, and no one's First Amendment rights are chilled by such a finding, nor would anyone think they need to steer wide of their preferred language if this court overrules Defendant's motion to dismiss.

## II.   Defendant's post was defamatory.

### a.  The statement is false and defamatory.

When determining if a statement is defamatory, a court considers if it "tends to injure the plaintiff in his trade, profession or community standing, or to lower him in the estimation of the community." *Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001) (citations omitted). In this consideration, the court should consider that a materially false statement will have "a different effect on the mind of the reader from that which the pleaded truth would have produced." *Shipkovitz v. Wash. Post. Co.*, 408 Fed. App'x 376, 377 (D.C. Cir. 2010) (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)). A minor inaccuracy will not amount to falsity if the gist or sting of the libelous charge is justified. *See Liberty Lobby, Inc. v. Dow Jones Co., Inc.*, 838 F.2d 1287, 1296 (D.C. Cir. 1988) (noting that a statement is nonactionable if "[t]he sting of the charge . . . is substantially true"). In this Circuit, "[w]hether a statement is capable of defamatory meaning is a question of law, but '[i]t is only when the court

18

can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law[] that it was not libelous.'" *Weyrich*, 235 F.3d at 627 (quoting *White v. Fraternal Order of the Police*, 909 F.2d 512, 518 (D.C. Cir. 1990)).

First, Defendant does not argue that his statement is true, or even substantially true. He therefore waives any argument on that point. *See Golden v. Mgmt. & Training Corp.,* 319 F. Supp. 3d 358, 383 (D.D.C. 2018) (citing *Day v. McDonough*, 547 U.S. 198, 205 (2006)); *Steele v. United States,* 657 F. Supp. 3d 23 44 (D.D.C. 2023). Regardless, as pled, the statement is unequivocally false.

Second, the statement is capable of a defamatory meaning. In *Weyrich*, the district court found that the defendant's description of the plaintiff, that, in response to a supposed betrayal from a Mr. Pascoe, the plaintiff "snapped," "erupted in a volcano of screaming," "froth[ed] at the mouth," and "dispatched a letter to Pascoe's fiancée, questioning Pascoe's loyalty and implying that he was unfit for marriage," was not reasonably capable of a defamatory meaning. *Weyrich*, 235 F.3d at 627. The D.C. Circuit, however, reversed the district court's findings, noting, "[i]f indeed the story is fabricated, we cannot say that it is not reasonably capable of any defamatory meaning." *Id.* This is because "it arguably makes [the plaintiff] appear highly volatile, irrational, unsound and otherwise "odious, infamous, or ridiculous." *Id.*

Likewise, the statement here is directed against Mr. Passantino's profession and trade and damages his community reputation and standing. The accusation that Mr. Passantino coached a witness to lie is an accusation of a crime, as well as an

accusation of violating a lawyer's ethical obligations. As noted by Defendant, similar accusations have resulted in (now dismissed) bar grievance complaints against Mr. Passantino.[4] Even in light of Mr. Passantino's exoneration of these allegations, the proceedings against Mr. Passantino demonstrate that statements like Defendant's harmed Mr. Passantino in both his profession and his trade. Moreover, a lawyer accused of such ethical and legal violations is certainly damaged in his reputation within the community. As such, accusations of criminal and unethical conduct such as Defendant's are defamatory.

Defendant's allegations distort the truth. The truth is that Mr. Passantino gave appropriate instructions to a witness about the highly technical approach required to fully answer questions during a deposition. The witness may have retroactively misunderstood some of the instructions (either out of inexperience, the desire for fame and book sales, or both), but the witness plainly recalls that Mr. Passantino specifically told her to tell the truth. If this entire picture was accurately portrayed, then the sting of the statements would be different. Instead, Defendant chose to paint Mr. Passantino with a brush that suggests illegal and unethical conduct. This is false and defamatory.

---

[4] *Supra*, n.1.

**b.    The statement was published with negligence and actual malice.**

Again, Defendant does not put forth any argument on this issue and therefore waives it as a defense. *See Golden,* 319 F.Supp.3d at 383 (citing *Day*, 547 U.S. at 205 (2006)); *Steele,* 657 F. Supp. 3d at 44. Regardless, Mr. Passantino properly pled both. Indeed, Mr. Passantino pled that:

> Defendant knew [his statement] to be false, or said it with reckless disregard for its falsity, because the transcripts of testimony showed that Mr. Passantino had done nothing to obstruct or shape Ms. Hutchinson's testimony and indeed showed the opposite as she stated that "Stefan never told me to lie" and that "he told me not to lie."

Dkt. No. 1 at ¶ 19. And that: "At the very least, Defendant should have known with ordinary care that his statement was false, and therefore published the statement negligently." *Id.* at ¶ 29. Thus, Mr. Passantino has met his burden.

**c.    Mr. Passantino suffered actual and legal harm.**

Defendant again does not argue that Mr. Passantino has not properly alleged that he has suffered actual or legal harm. *See Golden,* 319 F.Supp.3d at 383 (citing *Day*, 547 U.S. at 205 (2006)); *Steele,* 657 F. Supp. 3d at 44. Indeed, Defendant's only direct arguments regarding harm relate to injurious falsehood claims and special damages. These arguments (incorrectly) claim that Mr. Passantino's allegations of harm indicate that he is suing primarily about the damage to his reputation as a lawyer and therefore understands the sting of the statement as about unethical conduct. As to the latter, Mr. Passantino clearly alleged that the proper interpretation of Defendant's statements is an accusation of the crime of suborning perjury. *See* Dkt. No. 1 at ¶¶ 28–29.

As Defendant has presented no argument on these issues, any defense based on them is waived. *Doe #1 v. American Federation of Govt. Employees*, 554 F. Supp. 3d 75, 91 (D.D.C. 2021) ("Because plaintiffs did not raise this argument in their initial motion . . . the argument is waived."). Regardless, Mr. Passantino did allege actual and legal harm including "loss of business and income, damage to his reputation, humiliation, embarrassment, and mental anguish, all of which are ongoing in nature, are long-lasting and will be suffered in the future." *See id. a*t ¶ 30. Therefore, Mr. Passantino has met his burden to show that he suffered actual and legal harm.

### III.   Mr. Passantino Properly Pled Injurious Falsehood.

Defendant solely focuses on special damages for his conclusion that Mr. Passantino did state a cause of action of injurious falsehood. Mr. Passantino's Complaint, however, makes clear that he suffered as a result of Defendant's conduct.

In analyzing the sufficiency of pleading special damages, under Federal Rule of Civil Procedure 9, a strict approach is not required; the allegations merely need to place the defendant on notice. This is because, while Rule 9(b) requires allegations to be made with particularity, Rule 9(g), which governs pleading special damages, makes no such requirement. Fed. R. Civ. P. 9. Accordingly, in *ADT LLC*, it was sufficient for the plaintiff to "allege lost sales, profits, and goodwill" to properly plead special damages. *ADT LLC v. Vivant Smart Home, Inc.*, No. 20-cv-23391, 2021 WL 4478932, at *3 (S.D. Fla. Sept. 30, 2021). A similar standard should be applied here.

Here, Mr. Passantino has pled that he is in the practice of law, that Defendant's statement directly concerned that practice of law, and Defendant

intended for his statement to hamper Mr. Passantino in his practice of law, which did, in fact, happen. Dkt. No. 1 at ¶¶ 34–36. Accordingly, Mr. Passantino has met his burden at the motion to dismiss stage.

## CONCLUSION

For the foregoing reasons, Plaintiff Stefan Passantino respectfully requests that this Court deny Defendant's motion to dismiss.

Dated: April 1, 2024                    Respectfully submitted,

/s/ *Jason C. Greaves*
Jesse R. Binnall, Bar ID VA022
Jason C. Greaves, D.C. Bar No. 1033617
Shawn Flynn, Bar ID MI0101
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jesse@binnall.com
        jason@binnall.com
        shawn@binnall.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on April 1, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ *Jason C. Greaves*
Jason C. Greaves

*Counsel for Plaintiff*

24