UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEFAN PASSANTINO,

    *Plaintiff,*

v.

ANDREW WEISSMANN,

    *Defendant.*

Case No.: 1:23-cv-2780-LLA

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION
<u>FOR JUDGMENT ON THE PLEADINGS</u>**

Jesse R. Binnall, Bar ID VA022
jesse@binnall.com
Jason C. Greaves, D.C. Bar No. 1033617
jason@binnall.com
Jared J. Roberts, Bar ID FL00153
jared@binnall.com
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

BACKGROUND ...........................................................................................1

LEGAL STANDARDS...................................................................................4

ARGUMENT ................................................................................................5

      I.      Defendant's post is not substantially true. ..........................................5

      II.     Defendant acted with the requisite intent. ......................................15

          a.   Mr. Passantino is not a limited-purpose public figure. ..............15

          b.   Mr. Passantino adequately pled Defendant's negligence. ..........17

          c.   Regardless, Defendant acted with actual malice. .......................19

CONCLUSION ...........................................................................................24

CERTIFICATE OF SERVICE .....................................................................25

i

TABLE OF AUTHORITIES

Cases

*Arpaio v. Zucker,*
    414 F. Supp. 3d 84, 90 (D.D.C. 2019) ........................................................................6

*Ashcroft v. Iqbal,*
    556 U.S. 662, 664 (2009) ..............................................................................................5

*Ayissi–Etoh v. Fannie Mae,*
    712 F.3d 572, 578 (D.C. Cir. 2013) ............................................................................4

*Banneker Ventures, LLC v. Graham,*
    798 F.3d 1119, 1133 (D.C. Cir. 2015) .................................................................10, 11

*Bobulinski v. Tarlov,*
    758 F. Supp. 166, 178 n.8 (S.D.N.Y. 2024)..............................................................16

*Dowd v. Calabrese,*
    589 F. Supp. 1206, 1210 (D.D.C. 1984) ....................................................................4

*Farah v. Esquire Mag.,*
    736 F.3d 528, 533–34 (D.C. Cir. 2013) .....................................................................4

*Garrison v. Louisiana,*
    379 U.S. 64, 74 (1964) ................................................................................................20

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323, 345 (1974) ............................................................................................16

*Harte-Hanks Communications, Inc. v. Connaughton,*
    491 U.S. 657, 659 (1989) ......................................................................................19, 21

*Heuer v. Kee,*
    15 Cal.App.2d 710, 714 (1936) ...................................................................................6

*Jankovic v. Int'l Crisis Grp.,*
    822 F.3d 576, 589 (D.C. Cir. 2016) .....................................................................21, 23

*Jung v. Ass'n of Am. Med. Colls.*,
    339 F. Supp. 2d 26, 35–36 (D.D.C. 2004) ..............................................................5

*Kendrick v. Fox Television*,
    659 A.2d 814, 822 (D.C. 1995)................................................................................18

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
    838 F.2d 1287, 1296 (D.C. Cir. 1988) ...................................................................6

*Mason v. American Prospect, Inc.*,
    No. 23-cv-2238-LLA, 2024 WL 4345855, at *5 (D.D.C. Sept. 30, 2024) .................13

*Masson v. New Yorker Mag., Inc.*,
    501 U.S. 496, 517 (1991) ........................................................................................6

*McFarlane v. Sheridan Square Press, Inc.*,
    91 F.3d 1501, 1509–10 (D.C. Cir. 1996) ................................................................21

*McNamara v. Picken*,
    866 F. Supp. 2d 10, 14 (D.D.C. 2012) ..............................................................4, 5

*Moldea v. New York Times Co.*,
    15 F.3d 1137, 1142 (D.C. Cir. 1994) .....................................................................6

*Montanans for Multiple Use v. Barbouletos*,
    542 F. Supp. 2d 9, 13 (D.D.C. 2008), aff'd 568 F.3d 225 (D.C. Cir. 2009)................5

*Montgomery v. Risen*,
    197 F. Supp. 3d 219, 261 n.36 (D.D.C. 2016) .......................................................18

*Moss v. Stockard*,
    580 A.2d 1011, 1031 (D.C. 1990)...........................................................................16

*N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*,
    163 F.3d 449, 454–56 (7th Cir. 1998) ...................................................................10

*New York Times Co. v. Sullivan*,
    376 U.S. 254, 279–80 (1964) ..................................................................................19

*Parsi v. Daioleslam*,
    595 F. Supp. 2d 99, 108 (D.D.C. 2009) ..................................................................6

*S. Air Transp, Inc. v. Am. Broad. Companies, Inc.*,
    670 F. Supp. 38, 44 (D.D.C. 1987) .........................................................................15

*St. Amant v. Thompson,*
390 U.S. 727, 732 (1968) ..............................................................19, 20, 21, 22

*Tavoulareas v. Piro,*
817 F.2d 762, 790 (D.C. Cir. 1987) ....................................................19, 20, 21

*van der Stelt v. Georgetown Univ.,*
774 F. Supp. 3d 90, 122 (D.D.C. 2025) ...................................................16

*Von Kahl v. Bureau of Nat. Affairs, Inc.,*
934 F. Supp. 2d 204, 218 (D.D.C. 2013) ................................................20

*Weyrich v. New Republic, Inc.,*
235 F.3d 617, 626 (D.C. Cir. 2001) ..........................................................4

*Zimmerman v. Al Jazeera America, LLC,*
246 F. Supp. 3d 257, 280 (D.D.C. 2017) ................................................23

### Other Authorities

DISTRICT OF COLUMBIA OFFICE OF DISCIPLINARY COUNSEL (Feb. 2, 2024), https://static01.nyt.com/newsgraphics/documenttools/c3f8da0e4bae8a90/7ffb8cdb-full.pdf ...........................................................................................3, 14

LAWYERS DEFENDING AMERICAN DEMOCRACY (Mar. 6, 2023), https://ldad.org/wp-content/uploads/2023/03/Ethics-Complaint-against-Stefan-Passantino.pdf............3

STATE BAR OF GEORGIA STATE DISCIPLINARY BOARD (Feb. 26, 2024), https://static01.nyt.com/newsgraphics/documenttools/37252e37ec21f5dd/b30b04b3-full.pdf.......................................................................................................14

U.S. HOUSE ADMINISTRATION SUBCOMMITTEE ON OVERSIGHT, *Interim Report on the Failures and Politicization of the January 6th Select Committee* (Dec. 17, 2024) at 46–47, https://cha.house.gov/_cache/files/6/d/6dae7b82-7683-4f56-a177-ba98695e600d/145DD5A70E967DEEC1F511764D3E6FA1.final-interim-report.pdf .........................................................................................12

U.S. HOUSE COMMITTEE ON THE JUDICIARY, *Deposition of: Jack Smith* (Dec. 17, 2025) at 185-89, https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/2025-12/Smith-Depo-Transcript_Redacted-w-Errata.pdf ....................................................................................................13

### Rules

FED. R. CIV. P. 12(c) ................................................................................................4

### Treatises

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 150 cmt. e (1971) ............................4

RESTATEMENT (SECOND) OF TORTS § 581A, comment f (1977) .......................................6

Defendant—a former federal prosecutor—wants to engage in revisionist history, ignoring the truth of what was actually said and done, and selectively editing his quotes accusing another lawyer of suborning perjury without consequence. The truth is that Mr. Passantino's own client stated, under oath, that Mr. Passantino never instructed her to lie. Mr. Passantino has already been fully exonerated of any allegations that he ever "coached" his client to lie. And given the publicly available transcripts, and Defendant's legal background, he well knew that Mr. Passantino did exactly what every other ethical attorney does with their client prior to testifying under oath. He provided standard legal advice rather than Defendant's own lie of Mr. Passantino "coaching" his client to lie. Defendant embraced that defamatory statement and proselytized his viewers to believe it as a matter of fact.

This Court previously denied Defendant's motion to dismiss Mr. Passantino's claim for defamation. The circumstances have not changed. Mr. Passantino has plausibly alleged that Defendant defamed him. Accordingly, Mr. Passantino respectfully requests that this Court rightly deny Defendant's motion.

## BACKGROUND

Stefan Passantino has been an attorney for over 30 years. In that time, he has consistently fostered a reputation as an ethical, honorable lawyer who represents his clients fully consistent with his legal and ethical obligations. Dkt. No. 1 at ¶ 5. Before moving into private practice, Mr. Passantino served as the senior ethics lawyer for President Trump in the White House between 2017 and 2018. *Id.* at ¶ 6.

1

In 2022, Mr. Passantino represented several witnesses before the United States House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Select Committee"), including Cassidy Hutchinson. *Id.* at ¶ 7. As with all his clients, Mr. Passantino represented Ms. Hutchinson honorably, ethically, fully compliant with his legal and ethical obligations, and fully consistent with Ms. Hutchinson's sole interests as expressed to him by her. *Id.* Mr. Passantino represented Ms. Hutchinson before the Select Committee during three depositions—February 23, 2022, March 7, 2022, and May 17, 2022. *Id.* at ¶ 9. The transcripts of each are publicly available. *Id.*

A quick review of these readily available transcripts makes it apparent to a reasonable reader that Mr. Passantino was not attempting to obstruct or shape Ms. Hutchinson's testimony in any way. *Id.* at ¶ 10. He emphatically did not attempt to get Ms. Hutchinson to lie. As the transcripts show, Mr. Passantino never instructed Ms. Hutchinson not to answer any of the Select Committee's questions and never made any effort to shape the substance of her responses. *Id.* at ¶ 11. The Committee repeatedly thanked Mr. Passantino for his clarifying questions and for keeping Ms. Hutchinson on track during her interviews. *Id.* Instead, it was Ms. Hutchinson who did not want to comply. *Id.* at ¶ 13. Mr. Passantino, however, *encouraged* her to comply. *Id.*

On September 14, 2022, Ms. Hutchinson testified for a fourth time before the Select Committee, this time with new counsel because she was no longer represented by Mr. Passantino. She rightly said on the record, "I want to make this clear to you:

2

Stefan never told me to lie." *Id.* at ¶ 16. Ms. Hutchinson continued, "I just want to make sure that I make it clear that he didn't say, 'I want you to lie and say that you don't recall on these things when I know you recall.'" *Id.* at ¶ 17. She reiterated that, "he didn't tell me to lie. *He told me not to lie.*" *Id.* While it is also true that Ms. Hutchinson made self-serving comments to distance herself from her prior inconsistent testimony, such that she could inject fanciful gossip into the record, this does not change the "pleaded truth," which is that Mr. Passantino has pleaded—and Ms. Hutchinson's testimony supports—that he did not coach her to lie.

Despite all of this, a year and a day later, on September 15, 2023, Defendant posted on X (formerly Twitter) that Mr. Passantino "coached [Cassidy Hutchinson] to lie." *Id.* at ¶ 18. Defendant knew this to be false or said it with reckless disregard for its falsity.

Indeed, in February 2024, the D.C. State Bar dismissed claims against Mr. Passantino under D.C. Rule 8.4(b) for the alleged subornation of perjury, obstructions of justice, and witness tampering, as well as false claims that Mr. Passantino engaged in "efforts to procure false testimony to Congress."[1] Specifically, the D.C. Office of Disciplinary Counsel found that they could not prove these allegations.

On September 30, 2024, this Court denied Defendant's motion to dismiss Mr. Passantino's claim for defamation. *See* Dkt. No. 17. Subsequently, the Parties began

---

[1] DISTRICT OF COLUMBIA OFFICE OF DISCIPLINARY COUNSEL (Feb. 2, 2024), https://static01.nyt.com/newsgraphics/documenttools/c3f8da0e4bae8a90/7ffb8cdb-full.pdf; LAWYERS DEFENDING AMERICAN DEMOCRACY (Mar. 6, 2023), https://ldad.org/wp-content/uploads/2023/03/Ethics-Complaint-against-Stefan-Passantino.pdf.

discovery. Nearly sixteen months later, Defendant now moves for judgment on the pleadings.

## LEGAL STANDARDS[2]

To meet the requirements for defamation under District of Columbia law, a plaintiff must prove that (1) the plaintiff was the subject of a false and defamatory statement; (2) the statement was published to a third party; (3) publishing the statement was at least negligent; and (4) the plaintiff suffered either actual or legal harm. *Farah v. Esquire Mag.*, 736 F.3d 528, 533–34 (D.C. Cir. 2013) (citing *Ayissi– Etoh v. Fannie Mae,* 712 F.3d 572, 578 (D.C. Cir. 2013)).[3]

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter the pleadings are closed." *McNamara v. Picken*, 866 F. Supp. 2d 10, 14 (D.D.C. 2012) (quoting FED. R. CIV. P. 12(c)). "A motion pursuant to Rule 12(c) is appropriately granted when, at the close of the pleadings, 'no material issue of fact remains to be resolved, and [the movant] is clearly entitled to judgment as a matter of law.'" *Id.* (quoting *Montanans for Multiple Use v.*

---

[2] For defamation actions, to determine choice of law, D.C. courts apply the law of "the place where the plaintiff suffered injury by reason of his loss of reputation." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 626 (D.C. Cir. 2001) (quoting *Dowd v. Calabrese*, 589 F. Supp. 1206, 1210 (D.D.C. 1984) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 150 cmt. e (1971)). As Mr. Passantino properly alleged, he suffered "significant damages in Washington D.C. and Georgia, where he does business." Compl. at ¶ 30. Accordingly, because this case was brought in Washington, D.C., and that is where Mr. Passantino felt the harm of Defendant's statement, D.C. law is appropriate.

[3] Defendant challenges only the first and fourth elements on this motion.

*Barbouletos*, 542 F. Supp. 2d 9, 13 (D.D.C. 2008) (citations omitted), aff'd 568 F.3d 225 (D.C. Cir. 2009)).

Courts evaluate motions for judgment under Rule 12(c) on the pleadings under the same standard as motions to dismiss under Rule 12(b)(b). *McNamara,* 866 F. Supp. 2d at 14 (citing *Jung v. Ass'n of Am. Med. Colls.*, 339 F. Supp. 2d 26, 35–36 (D.D.C. 2004)). In doing so, "[a] court must treat the complaint's factual allegations as true, 'even if doubtful in fact,' but it need not accept as true legal conclusions set forth in a complaint. *Id.* (internal citations omitted). "Accordingly, a court must accept the plaintiff's well-pleaded factual allegations to the extent that 'they plausibly give rise to an entitlement to relief,' and 'may thus only grant judgment on the pleadings if it appears, even accepting as true all inferences from the complaint's factual allegations, that the plaintiff cannot prove any set of facts entitling him to relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)) (internal citation omitted).

## ARGUMENT

### I.    Defendant's post is not substantially true.

Defendant stated, as fact, that Mr. Passantino "coached" a Congressional witness, Ms. Hutchinson, to lie. Yet, as Ms. Hutchinson herself stated and testified, Mr. Passantino *never* told her to lie, and, instead, he encouraged her to comply with the investigation. Defendant makes the unwarranted leap that because Mr. Passantino relies upon this statement as evidence that he did not, in fact, instruct Ms. Hutchinson to lie, that the Court must accept *all* statements by Ms. Hutchinson in her testimony as "the pleaded truth." This is incorrect as the court is not required

to accept any statement in Ms. Hutchinson's testimony as "truth" but only as evidence in support of Mr. Passantino's allegations. It will be up to a jury to decide the credibility of Ms. Hutchinson's testimony.

"[T]ruth is a complete defense to defamation." *Moldea v. New York Times Co.*, 15 F.3d 1137, 1142 (D.C. Cir. 1994). "For purposes of defamation law, a communication can be "true" even if it is only substantially true." *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 90 (D.D.C. 2019) (citations omitted). The statement does not need to be completely error free. *Parsi v. Daioleslam*, 595 F. Supp. 2d 99, 108 (D.D.C. 2009) (citing *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1296 (D.C. Cir. 1988); RESTATEMENT (SECOND) OF TORTS § 581A, comment f (1977)). "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (quoting *Heuer v. Kee*, 15 Cal.App.2d 710, 714 (1936)). The question, therefore, becomes: "is the 'sting of the charge' 'substantially true'?" *Parsi*, 595 F. Supp. 2d at 108 (citing *Dow Jones & Co.*, 838 F.2d at 1296; *Moldea*, 15 F.3d at 1150). When there is a genuine dispute as to whether a statement is substantially true, "it is the jury's province to determine whether the publication was sufficiently false so as to have defamed the plaintiff." *Moldea*, 15 F.3d at 1150.

The substantial truth doctrine is well illustrated in *Arpaio v. Zucker*. There, three different reporters, CNN, Rolling Stone, and HuffPost, referred to the plaintiff as an "ex-felon," when, in actuality, the plaintiff had only ever been convicted of a misdemeanor. *Arpaio*, 414 F. Supp. 3d at 90–91. As to CNN, in conjunction with

6

referring to the plaintiff as an "ex-felon," CNN also included the full context and circumstances of the plaintiff's conviction. *Id.* Therefore, "the difference between a felony or a misdemeanor became less meaningful." *Id.* As to the other two defendants, however, they did not report this context. *Id.* And to someone reading the articles without that context, the sting or gist of the erroneous label of "felony" conveys much more serious implications than the true label of "misdemeanor." *Id.* Accordingly, Rolling Stone and HuffPost's statements were not substantially true. *Id.*

Here, Defendant stated, as fact, that Mr. Passantino *coached a witness to lie* to the United States House Select Committee on the January 6 Attack ("Select Committee"). As the Court recognized, "[i]n that string of text, read as a whole, the clear factual implication is that Mr. Passantino 'instruct[ed], direct[ed], or prompt[ed]' Ms. Hutchinson 'to lie' to the Select Committee." Dkt. No. 17 at 11. Such conduct is a crime. Pursuant to 18 U.S.C. § 1622, Subornation of Perjury, "[w]hoever procures another to commit any perjury is guilty of subornation of perjury[.]" It would also very likely constitute obstruction of justice, witness tampering, as well as a violation of 18 U.S.C. § 1001 for making false statements to Congress. As Mr. Passantino has alleged, however, supported by underlying record evidence—which must be viewed in the light most favorable to Mr. Passantino—Mr. Passantino did not "coach" Ms. Hutchinson to lie.

Mr. Passantino represented Ms. Hutchinson before the Select Committee at three depositions—February 23, 2022, March 7, 2022, and May 17, 2022. Compl. at ¶ 9. A review of these transcripts illustrate that Mr. Passantino was not

7

attempting to obstruct or shape Ms. Hutchinson's testimony in any way. *Id.* at ¶ 10. Mr. Passantino's only intervention into Ms. Hutchinson's testimony were consistent with his admonitions to her to be honest, not to speculate, and to honor the specific question posed to her to the best of her current recollection. *Id.* Mr. Passantino never instructed Ms. Hutchinson not to answer any of the Select Committee's questions and never made any effort to shape the substance of her response. *Id.* at ¶ 11.

During the first deposition, Ms. Cheney noted that "we very much respect Ms. Hutchinson's responsible and professional engagement with this committee." Dkt. No. 45.4 at 165. To which Mr. Passantino responded, "[a]nd, Congresswoman, we appreciate that, and I have not stopped her from answering . . . I am not stopping her from giving her facts." *Id.* at 165–66. There are many instances throughout these transcripts illustrating Mr. Passantino's assistance to Ms. Hutchinson, rather than hinderance:

- Mr. Passantino: "I mean, I was just going to say, with the exception he doesn't want you to speculate. Just say what you know. He doesn't want you to guess or speculate. But, with that said, yes." *Id.* at 28.

- Ms. Hutchinson: "Okay." Mr. Passantino: "*But it is a fair question for him to ask –*" Ms. Hutchinson: "Okay." Mr. Passantino: "*-- what your perception of what you observed.*" Ms. Hutchinson: "Yeah." *Id.* at 66 (emphasis added).

- Mr. Passantino: "But, again, that's only if you know. You can give your observations if you know the source or don't. He's not asking you to speculate that. If you don't know, you don't know. But, you understand the distinction?" Ms. Hutchinson: "Yes." Mr. Passantino: "Okay." *Id.* at 68.

- Mr. Passantino: "I think what he's asking is, do you know from personal knowledge whether Mr. Scavino was in this meeting at that

time?" Ms. Hutchinson: "No. I wasn't at the White House at that time." Dkt. No. 45.5 at 42.

- Mr. Passantino: "And I think – I don't want to put words in the Congresswoman's – I think she's asking, if he said something, clearly there's an implication." Ms. Hutchinson: "Yeah." Mr. Passantino: "But I believe she's asking –" Ms. Hutchinson: "Yeah, I'm not aware of any specifics of if they don't do it." *Id.* at 99.

- Mr. Passantino: "Yeah. And I was going to say, he's not asking what they think. He's asking what you –" Ms. Hutchinson: "Yeah." Mr. Passantino: "– heard people say that would give you that impression." *Id.* at 103.

- Mr. Passantino: "That is something that I think we are still asserting a privilege as to nothing that Representative Cheney is asking about pertains to attorney-client advice. I'm just cautioning you because we might be on the brink of that, I just want to keep that in your mind. But that is not instructing you not to answer these questions." Dkt. No. 45.6 at 11.

- Mr. Passantino: "Don't speculate. She wants to know what you know. But don't feel an obligation to guess." *Id.* at 61.

- Mr. Passantino: "Go ahead and answer, but don't – if you don't know, say you don't know. I mean, say whatever you want to say, but make sure you are clear whether you are speaking from knowledge or you are making an estimate." *Id.* at 68.

This illustrates that Mr. Passantino did not coach Ms. Hutchinson to lie; to the contrary, he provided her with standard legal advice, made sure she understood the question and encouraged her to answer each question that she was able to answer. Furthermore, in text messages, Ms. Hutchinson admitted and confirmed to a friend that while she did not want to cooperate with the Select Committee, it was Mr. Passantino who encouraged her to do so. Compl. at ¶ 13.

In Ms. Hutchinson's fourth interview in September of 2022, and without Mr. Passantino representing her, Ms. Hutchinson stated, "*I want to make this clear to*

*you: Stefan never told me to lie.*" Compl. at ¶ 16 (emphasis added). She continued, "just want to make sure that I make it clear that he didn't say, 'I want you to lie and say that you don't recall on these things when I know you recall.'" *Id.* And she said again, "he didn't tell me to lie. He told me not to lie." *Id.* Defendant claims that because Mr. Passantino has cited these statements as evidence to support his allegation that he did not coach Ms. Hutchinson to lie that the Court must accept the *entire* transcript from Ms. Hutchinson's September 2022 interview as "the pleaded truth." This ignores the pleading standard and asks this court to make credibility determinations. The only thing this Court must accept as "the pleaded truth" is Mr. Passantino's assertion that he did *not* coach Ms. Hutchinson to lie, and the fact that Ms. Hutchinson made statements in her deposition consistent with that fact. The credibility of her statement, or any of her other statements is not to be determined at this stage.

As the D.C. Circuit has recognized, "[t]he incorporation by reference doctrine has limits." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015). "Rule 10(c) 'does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact.'" *Id.* (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454–56 (7th Cir. 1998)). Instead, "[w]hen considering incorporation, it is necessary to consider 'why a plaintiff attached the documents, who authored the documents, and the reliability of the documents.'" *Id.* at 1133–34 (quoting *N. Ind. Gun*, 163 F.3d at 455). Accordingly, the D.C. Circuit

declined to rely on portions of a report that the plaintiff's complaint did not adopt. *Banneker,* 798 F.3d at 1134. The plaintiff's claims were not based on the report, the report was not necessary to the claims, and its reliability was unknown. *Id.* While the plaintiff referred to some of the report's contents "to show how it learned some facts in the complaint," "it did not purport to and was not required to adopt the factual contents of the report wholesale." *Id.*

Here, as in *Banneker*, Mr. Passantino adopted some, but not all, of the contents from the transcript of Ms. Hutchinson's September interview (the "September Transcript"). Nor is Mr. Passantino's claim based on the September Transcript; instead, his claim is based on Defendant's lie that Mr. Passantino coached Ms. Hutchinson to lie. Simply because Mr. Passantino cited to portions of the September Transcript in pleading facts supporting his claim does not mean he "adopt[ed] the factual contents of the [September Transcript] wholesale." *See id.*

Still, as pleaded, and even considering the entire September 2022 Transcript, a reasonable reader could view Ms. Hutchinson's testimony as being consistent with a woman who was not coached to lie. Indeed, as many reasonable readers interpreted her testimony, she was a fabulist who wanted to distance herself from her prior testimony so that she could spread inflammatory gossip and hearsay. *See, e.g.,* Exs. A and B[4] (demonstrating that many did, in fact, question Ms. Hutchinson's credibility after the release of her testimony).

---

[4] Exhibits A and B are attached to Mr. Greaves's declaration, which includes their full citations and URLs. Mr. Passantino does not concede that the Court should take judicial notice of media coverage of Ms. Hutchinson's testimony; however, to the

Defendant's baseless substantial truth argument is further undermined by the dismissal of the coordinated bar complaints leveled against Mr. Passantino. The D.C. State Bar dismissed, finding that they could not prove the allegations against him.[5] Notably, an Interim Report issued by the United States House of Representatives Committee on House Administration made a finding that "Representative Cheney and Cassidy Hutchinson attempted to disbar Stefan Passantino," stating:

> After Hutchinson switched attorneys at Representative Cheney's direction, the Select Committee needed to shore up Hutchinson's credibility as a witness and explain away her ever changing testimony. To do this, the Select Committee created a narrative that would make Passantino the scapegoat. They manufactured the story that Passantino gave Hutchinson faulty advice—such as instructing Hutchinson to withhold information, to misrepresent her testimony, and even that Passantino implied he would help Hutchinson with future employment in return for favorable testimony. Contrary to the Select Committee's and Hutchinson's narrative, however, the Subcommittee obtained messages between Alyssa Farah Griffin and Hutchinson where Hutchinson admits that Passantino was acting in her best interest and that she agreed with his counsel.[6]

This was made possible because, as the Interim Report noted, Ms. Cheney had inappropriate, and unethical, direct conversations with Ms. Hutchinson without Mr.

---

extent that the Court accepts Defendant's proffered articles, not for the truth of their contents but to illustrate how some in the media reacted to Ms. Hutchinson's testimony, Mr. Passantino includes Exhibits A and B to show that this was far from a universal evaluation.

[5] *Supra*, n. 1.

[6] U.S. HOUSE ADMINISTRATION SUBCOMMITTEE ON OVERSIGHT, *Interim Report on the Failures and Politicization of the January 6th Select Committee* (Dec. 17, 2024) at 46–47, https://cha.house.gov/_cache/files/6/d/6dae7b82-7683-4f56-a177-ba98695e600d/145DD5A70E967DEEC1F511764D3E6FA1.final-interim-report.pdf.

Passantino's knowledge.[7] And even former Special Counsel for the United States Department of Justice, Jack Smith, recognized that there were some contradictions in Ms. Hutchinson's testimony.[8]

Accordingly, a reasonable person could find that Defendant's statement is anything but a minor inaccuracy. Defendant asserted that Mr. Passantino instructed, directed, or prompted Ms. Hutchinson to lie to the Select Committee. The underlying record evidence shows: (1) during Ms. Hutchinson's first three interviews, Mr. Passantino provided her with standard legal advice and assisted her depositions; (2) Ms. Hutchinson herself stated that Mr. Passantino did not coach her to lie, and told her that if she did actually recall, she had to answer; and (3) Mr. Passantino has already been cleared of these false claims. Viewing this evidence in the light most favorable to him, the gist of Defendant's statement is obviously much more damaging than the truth, that is Mr. Passantino did nothing to obstruct or hinder Ms. Hutchinson's depositions.

Additionally, Defendant relies on various media articles which, regardless of being judicially noticed, cannot be considered for the truth of any statements within. *See Mason v. American Prospect, Inc.*, No. 23-cv-2238-LLA, 2024 WL 4345855, at *5 (D.D.C. Sept. 30, 2024) ("The court additionally concludes that it can take judicial notice of news articles for the 'existence or nature of the articles'—and may do so

---

[7] *Id.* at 23.

[8] U.S. HOUSE COMMITTEE ON THE JUDICIARY, *Deposition of Jack Smith* (Dec. 17, 2025) at 185-89, https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/2025-12/Smith-Depo-Transcript_Redacted-w-Errata.pdf.

without converting the motion into one for summary judgment—but it may not consider the articles for the truth of their assertions."). Accordingly, anything said within these articles plays no role in determining what the truth is at this stage in the litigation. Furthermore, and unsurprisingly, many of these articles are defamatory in their own respects which does not change what the truth is: that Mr. Passantino did not instruct or otherwise prompt Ms. Hutchinson to lie.

Finally, Defendant inappropriately relies on two bar complaints filed against Mr. Passantino. Conveniently, Defendant omits references to the outcome of these bar complaints in which the D.C. and Georgia State Bars each dismissed any claims that Mr. Passantino instructed or otherwise prompted Ms. Hutchinson to lie.[9] Therefore, the truth remains, even after these bar complaints, that Mr. Passantino did not "coach" Ms. Hutchinson lie. Defendant has nothing to support his position.

Defendant's allegations also distort the truth, which is, that Mr. Passantino gave appropriate instructions to a witness about the highly technical approach required to fully answer questions during a deposition. The witness may have retroactively misunderstood some of the instructions (either out of inexperience, the desire for fame, to promote book sales, or all of the above), but the witness plainly recalled that Mr. Passantino specifically told her to tell the truth. If this entire picture was accurately portrayed, then the sting of the statements would be different.

---

[9] DISTRICT OF COLUMBIA OFFICE OF DISCIPLINARY COUNSEL (Feb. 2, 2024), https://static01.nyt.com/newsgraphics/documenttools/c3f8da0e4bae8a90/7ffb8cdb-full.pdf; STATE BAR OF GEORGIA STATE DISCIPLINARY BOARD (Feb. 26, 2024), https://static01.nyt.com/newsgraphics/documenttools/37252e37ec21f5dd/b30b04b3-full.pdf.

Instead, Defendant chose to paint Mr. Passantino with a brush that suggests illegal and unethical conduct to those viewing Defendant's post, as intended. Such conduct is false and defamatory.

Viewing these underlying facts in the light most favorable to Mr. Passantino, his inference is not unreasonable and could lead to a finding of a defamatory meaning. Given the gist of the truth, that Ms. Hutchinson testified that he never told her to lie, that Mr. Passantino was the one encouraging Ms. Hutchinson to comply with the Select Committee, that there is a finding that the Select Committee went behind Mr. Passantino's back to create false allegations, and that Mr. Passantino has already been cleared of these exact charges, Defendant's statement that Mr. Passantino *did* instruct Ms. Hutchinson to lie is materially different and false. Therefore, granting Defendant's motion at any point in this case, let alone at this stage, would be highly improper. *See S. Air Transp, Inc. v. Am. Broad. Companies, Inc.*, 670 F. Supp. 38, 44 (D.D.C. 1987).

## II.   Defendant acted with the requisite intent.

### a.   Mr. Passantino is not a limited-purpose public figure.

To determine whether someone is a limited-purpose public figure, courts look to: (1) "*whether a public controversy exists* and defines its scope"; (2) whether "the plaintiff '[was] shaping or [was] trying to shape the outcome of [the] public controversy'"; and (3) "whether the alleged defamation was germane to the plaintiff's participation in the controversy." *van der Stelt v. Georgetown Univ.*, 774 F. Supp. 3d

15

90, 122 (D.D.C. 2025) (quoting *Moss v. Stockard*, 580 A.2d 1011, 1031 (D.C. 1990)). All three prongs must be met. *Id.*

Mr. Passantino concedes that the Select Committee and the witnesses before it is a matter of public controversy. Mr. Passantino, however, was not shaping or trying to shape the outcome of that public controversy. Mr. Passantino was merely an attorney in private practice, representing a witness before the Select Committee. He had no influence on the Select Committee other than to, as illustrated above, provide standard legal advice to his client. In merely representing his client, Mr. Passantino did not "thrust" himself to the forefront of the public controversy. *See* Dkt. No. 45.1 at 31 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)). To hold otherwise would render every attorney, in any high-profile case, to be a limited-purpose public figure. *See Gertz*, 418 U.S. at 351 ("Respondent's suggestion would sweep all lawyers under the New York Times rule as officers of the court and distort the plain meaning of the 'public official' category beyond all recognition. We decline to follow it."). Mr. Passantino may be a well-known lawyer in some circles within his own orbit, "[h]e plainly did not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome." *Id.*[10]

---

[10] Given the holding in *Gertz*, the Southern District of New York expressed caution in answering the question as to whether Mr. Passantino was a public figure, ultimately declining to answer the question. *See Bobulinski v. Tarlov*, 758 F. Supp. 166, 178 n.8 (S.D.N.Y. 2024).

16

While Defendant argues that Mr. Passantino's conduct injected him into the public controversy, at this stage in the litigation, viewing the facts most favorable to Mr. Passantino, it remains true that he provided standard legal advice. For Defendant's argument to hold, this Court would have to accept, as a factual matter, that Mr. Passantino coached his client to lie or otherwise attempted to influence her testimony, which it cannot do. Because Mr. Passantino did nothing more than provide standard legal advice, he cannot plausibly be considered a public figure just because he represented a client in a well-known proceeding. Defendant also inaptly cites Mr. Passantino's appearance on "The Tucker Carlson Show" from November 2, 2024, which occurred over a year *after* Defendant's post on September 15, 2023. Dkt. No. 45.1 at 32 n.17. Thus, the fact remains that, at the time of Defendant's post, Mr. Passantino took no actions to give himself public notoriety.

### b.    Mr. Passantino adequately pled Defendant's negligence.

As a private individual, the requisite degree of fault in this case is negligence.[11] "To demonstrate negligence, a plaintiff must show 'a failure to observe an ordinary

---

[11] Defendant makes the unwarranted conclusion that Mr. Passantino "concede[s]" that actual malice is the applicable standard by "using it as a term." Dkt. No. 45-1 at 29 n.15. Actual malice is required to obtain punitive damages, which Mr. Passantino has asserted, so of course he has used it "as a term." And, as any cautious plaintiff would do in a media defamation case, Mr. Passantino has alleged facts to support actual malice, even if he is not required to meet that heightened burden. It is equally bizarre for Defendant to suggest that Mr. Passantino is required to allege facts to show that he is a private figure. It is Defendant that has asserted that Mr. Passantino is a limited public figure as an affirmative defense, and therefore it is Defendant's burden to establish that Mr. Passantino is *not* a private figure. Regardless, the allegations of the Complaint, read in the light most favorable to Mr. Passantino,

degree of care in ascertaining the truth of an assertion before publishing it to others,' or, in other words, 'a failure to make a reasonable investigation as to truth.'" *Montgomery v. Risen*, 197 F. Supp. 3d 219, 261 n.36 (D.D.C. 2016) (quoting *Kendrick v. Fox Television*, 659 A.2d 814, 822 (D.C. 1995)).

Here, at the very least, Defendant acted negligently when he claimed that Mr. Passantino coached Ms. Hutchinson to lie. As noted above, Ms. Hutchinson's own testimony was that she was explicitly told to tell the truth. The fact that Ms. Hutchinson demonstrated at best a neophyte understanding of legal proceedings, deposition testimony, and legal advice, as well as an obvious desire in her fourth deposition and her televised testimony to spread gossip and hearsay, a reasonable reader—and particularly an experienced attorney like Weissman—should have known better than to publicly proclaim that Mr. Passantino coached Ms. Hutchinson to lie.

While other partisans may have drawn similar conclusions as Defendant in the media or in bar complaints, there is simply no evidence, at this stage in the litigation, that Defendant relied on anyone else when making his statement. Accordingly, Defendant cannot now rely on sources that he did not previously disclose when there is no record evidence that he actually viewed or otherwise knew of these media articles or bar complaints. Therefore, at this stage, Mr. Passantino has met his burden.

---

establish that he is a private figure as he was nothing more than an attorney in private practice, representing a client in a congressional hearing.

18

c.    Regardless, Defendant acted with actual malice.

Even if Mr. Passantino were a public figure in some relevant capacity, Defendant's motion still fails because Mr. Passantino plausibly alleges that Defendant acted with actual malice. Actual malice is defined as "knowledge that it was false or with reckless disregard of whether it was false or not." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 659 (1989) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). A plaintiff is entitled to prove a defendant's state of mind through circumstantial evidence, which is often the only way to prove malice in libel cases. *Id.* at 668, 681–82, 683–84.

In *St. Amant*, the Supreme Court laid out three general categories of the kinds of proof that would likely support a finding of actual malice: "evidence establishing that the story was (1) 'fabricated'; (2) 'so inherently improbable that only a reckless man would have put [it] in circulation'; or (3) 'based wholly on an unverified anonymous telephone call' or some other source that the defendant had 'obvious reason[] to doubt.'" *Tavoulareas v. Piro*, 817 F.2d 762, 790 (D.C. Cir. 1987) (citing *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)). The D.C. Circuit has been clear that "[t]he examples provided . . . are by no means exhaustive, but, as numerous courts have recognized, constitute useful benchmarks for lower courts to employ in determining whether a record is sufficient to sustain a finding of constitutional malice." *Id.* at 790.

Here, Mr. Passantino sufficiently pleaded that Defendant acted with knowledge of the falsity in his statement. The publicly available transcripts and text

19

messages demonstrate that Mr. Passantino *never* told Ms. Hutchinson to lie or otherwise obstructed her testimony. Instead, Mr. Passantino was the one encouraging Ms. Hutchinson's compliance with the Select Committee. Defendant's statement to the contrary is a complete and utter fabrication. And as the Supreme Court has noted, "[p]rofessions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant [or] is the product of his imagination." *St. Amant*, 390 U.S. at 732. *See also Von Kahl v. Bureau of Nat. Affairs, Inc.*, 934 F. Supp. 2d 204, 218 (D.D.C. 2013) (finding actual malice sufficiently pled where the defendant was put on notice that the statement was false but published it, nonetheless).

While Defendant cites media articles and bar complaints that made similar accusations as Defendant, there is no record evidence that Defendant relied on any of those materials. Instead, the only record evidence is that, upon viewing the transcripts, Defendant deliberately falsified the idea that Mr. Passantino "coached" Ms. Hutchinson to lie.

Minimally, Defendant acted with reckless disregard for the truth. A defendant acts with reckless disregard for the truth if it "in fact entertained serious doubts as to the truth of [its] publication" or acted "'with a high degree of awareness of . . . probable falsity.'" *St. Amant*, 390 U.S. at 731 (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)). This "'serious doubt' standard requires a showing of subjective doubts by the defendant." *Tavoulareas*, 817 F.2d at 789; *see also St. Amant*, 390 U.S. at 731 (explaining that "reckless conduct is not measured by whether a reasonably prudent

20

man would have published, or would have investigated before publishing" the statement); *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016) ("[I]t is not enough to show that defendant should have known better; instead, the plaintiff must offer evidence that the defendant in fact harbored subjective doubt.").

Subjective doubt can be proven through "the cumulation of circumstantial evidence, as well as through direct evidence." *Jankovic*, 822 F.3d at 589 (internal quotation marks and citation omitted). The rejection of an objective standard of care does not mean that libel defendants can defame with impunity merely by testifying that they published the challenged statements with a George Costanza brand of belief that they were true. *Tavoulareas*, 817 F.2d at 789 (citing *St. Amant*, 390 U.S. at 732). "The 'serious doubt' inquiry enunciated by the Supreme Court is too fact-bound to be resolved on the basis of any single factor or mechanical test." *Id.* at 788 (citing *St. Amant*, 390 U.S. at 730).

Although courts have found that failure to investigate alone will not support a finding of actual malice, the purposeful avoidance of the truth is in a different category. *See Connaughton*, 491 U.S. at 692; *see also St. Amant,* 390 U.S. at 731, 733. In *Connaughton,* the D.C. Circuit found that a newspaper's deliberate decision to avoid information that might have proven the story false was relevant to the issue of actual malice. *See McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1509–10 (D.C. Cir. 1996) (citing *Connaughton*, 491 U.S. at 692).

In this case, as outlined above, there was evidence that Mr. Passantino never coached Ms. Hutchinson to lie. Ms. Hutchinson herself testified that Mr. Passantino

21

never told her to lie, but rather told her not to lie, and Ms. Hutchinson's public text messages illustrate that Mr. Passantino was encouraging her compliance. Despite knowledge of the fact that Ms. Hutchinson stated, "he never told me to lie," Defendant avoided any information that would have proven his statement false. He simply ignored any contrary evidence to his statement, evidence that the D.C. and Georgia bars presumably considered when dismissing similar claims against Mr. Passantino.

While Defendant self-servingly now claims he believed his statement was true, the Supreme Court has expressly rejected this contention. *St. Amant*, 390 U.S. at 732. In *St. Amant*, the Supreme Court cautioned that a "defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true." *Id.* Indeed, the *St. Amant* Court warned that professions of good faith will not always carry the day where there is other evidence of actual malice. *See id.* Therefore, "[t]he finder of fact must determine whether the publication was indeed made in good faith." *Id.*

Defendant is an accomplished lawyer. He is a former prosecutor and top deputy to Special Counsel Robert Mueller. Compl. at ¶ 1. He is now currently employed as a legal analyst for a major media company, MSNBC. *Id.* Defendant well knows the difference between standard legal instructions to a client about not speculating and answering only the specific question asked based on personal knowledge, and encouraging or prompting a client to lie. As an experienced political and media operative, he also had the ability to distinguish Ms. Hutchinson's self-interested,

political motives to spread negative gossip about President Donald J. Trump—such as the hearsay within hearsay story of President Trump supposedly trying to grab the wheel from and wrestle the driver of "the Beast"—and that her only way to do so without being obviously disingenuous, was to distance herself from her prior testimony. This background, which Defendant ignores, is evidence of his subjective reasons to doubt his assertion that Mr. Passantino coached Ms. Hutchinson to lie.

Instead, Defendant chose to smear Mr. Passantino because of his well settled pattern of partisan animus and Mr. Passantino's prior affiliation with President Trump. Compl. at ¶ 20. Defendant also attacked Mr. Passantino as a means of distracting from and rehabilitating the contradictory and noncredible aspects of Ms. Hutchinson's testimony, which undermined the Select Committee and its own partisan findings and purpose. *Id.*

When "evidence of ill will or bad motive is also probative of a 'willingness to publish unsupported allegations,'" it can then suggest actual malice. *Jankovic*, 822 F.3d at 590–91. Here, Defendant had obvious reasons to doubt the truth in his statement. Still, he published it because of his improper motives and ill will. At this stage in the proceedings, that is more than sufficient to illustrate Defendant's actual malice, and Mr. Passantino has satisfied his burden. In sum, Mr. Passantino's "allegations can support a reasonable inference that [Defendant] in fact entertained serious doubts as to the truth of [his] allegation." *Zimmerman v. Al Jazeera America, LLC*, 246 F. Supp. 3d 257, 280 (D.D.C. 2017).

## CONCLUSION

For the foregoing reasons, Plaintiff, Stefan Passantino, respectfully requests that this Court deny Defendant's motion for judgment on the pleadings. To the extent that the court believes any aspect of the Complaint is lacking, Mr. Passantino would respectfully request leave to amend.

Dated: January 30, 2026

Respectfully submitted,

*/s/ Jason C. Greaves*
Jesse R. Binnall, Bar ID VA022
Jason C. Greaves, D.C. Bar No. 1033617
Jared J. Roberts, Bar ID FL00153
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jesse@binnall.com
        jason@binnall.com
        jared@binnall.com

*Counsel for Plaintiff*

24

## CERTIFICATE OF SERVICE

I certify that on January 30, 2026, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jason C. Greaves
Jason C. Greaves

*Counsel for Plaintiff*

25