**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

STEFAN PASSANTINO,

              *Plaintiff*,

    v.

ANDREW WEISSMANN,

              *Defendant*.

Case No. 1:23-CV-2780-LLA

**DEFENDANT ANDREW WEISSMANN'S
REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ....................................................................................................................... 3

   I.    THE OPPOSITION CONFIRMS THAT THE COMPLAINT DOES NOT PLEAD ANY FACTS DEMONSTATING FAULT. ...................................................................... 3

      A.   Mr. Passantino Fails To Plead Facts Demonstrating Actual Malice. ............................ 3

      B.   Mr. Passantino Fails To Meet The Negligence Standard. ............................................ 14

   II.   THE OPPOSITION CONFIRMS THAT IT IS SUBSTANTIALLY TRUE THAT MR. PASSANTINO "COACHED" MS. HUTCHINSON "TO LIE." ............................................ 16

CONCLUSION ................................................................................................................... 22

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*Arpaio v. Zucker*, 414 F. Supp. 3d 84 (D.D.C. 2019) ............................................................ 12, 21

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) ...................................... 18

*Bose Corp. v. Consumers Union of U.S. Inc.*, 466 U.S. 485 (1984).........................................9, 11

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081 (10th Cir. 2017) .............. 21

*Carpenter v. King*, 792 F. Supp. 2d 29 (D.D.C. 2011), *aff'd*, 473 F. App'x 4 (D.C. Cir. 2012)......
.......................................................................................................................................... 10, 14, 16

*Couch v. Verizon Commc'ns, Inc.*, 2021 WL 4476698 (D.D.C. Sept. 30, 2021), *aff'd*, 105 F.4th
425 (D.C. Cir. 2024) ........................................................................................................... 12

*Dameron v. Wash. Mag., Inc.*, 779 F.2d 736 (D.C. Cir. 1985).................................................... 3, 6

*Davis v. World Sav. Bank, FSB*, 806 F. Supp. 2d 159 (D.D.C. 2011)........................................... 17

*Deripaska v. Associated Press*, 282 F. Supp. 3d 133 (D.D.C. 2017) .................................... 10, 14

*Doe No. 1 v. Burke*, 91 A.3d 1031 (D.C. 2014)............................................................................. 5

*Fells v. Serv. Employees Int'l Union*, 281 A.3d 572 (D.C. 2022) ................................................. 6

*Fonville v. District of Columbia,* 38 F. Supp. 3d 1 (D.D.C. 2014)............................................... 21

*Florio v. Gallaudet Univ.*, 619 F. Supp. 3d 36 (D.D.C. 2022) .................................................... 19

*Freeman v. Giuliani*, 2022 WL 16551323 (D.D.C. Oct. 31, 2022)................................................ 4

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ........................................................... 3, 4, 6, 15

*Greene v. Nguyen*, 2005 WL 3275897 (D.D.C. Sept. 7, 2005) ................................................. 9, 17

*Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191 (D.D.C. 2002) .................................................. 20

*In re Papst Licensing GMBH & Co. KG Litig.*, 602 F. Supp. 2d 22 (D.D.C. 2009) ..................... 3

*Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576 (D.C. Cir. 2016) .......................................... 12, 13, 14

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) ........................................................ 17

*Kelley v. Fed. Bureau of Investigation*, 67 F. Supp. 3d 240 (D.D.C. 2014) ............................ 9, 17

*Kendrick v. Fox TV*, 659 A.2d 814 (D.C. 1995) ........................................................ 15

*Lohrenz v. Donnelly*, 350 F.3d 1272 (D.C. Cir. 2003) ................................................ 10

*Lurie v. Mid-A. Permanente Med. Group, P.C.*, 589 F. Supp. 2d 21 (D.D.C. 2008) .................... 2

*Marier v. Lance, Inc.*, 2009 WL 297713 (3d Cir. Feb. 9, 2009) ...................................... 21

*Mason v. Am. Prospect, Inc.*, 2024 WL 4345855 (D.D.C. Sept. 30, 2024) .............................. 4

*McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501 (D.C. Cir. 1996) .................. 10, 13, 14

*Moldea v. New York Times Co.*, 15 F.3d 1137 (D.C. Cir.), *modified*, 22 F.3d 310 (D.C. Cir. 1994) ................................................................................................ 20

*Montgomery v. Risen*, 197 F. Supp. 3d 219 (D.D.C. 2016), *aff'd,* 875 F.3d 709 (D.C. Cir. 2017).. ................................................................................................ 4, 6

*New York v. Facebook, Inc.*, 549 F. Supp. 3d 6 (D.D.C. 2021) ...................................... 17

*Noble v. D.C.*, 725 F. Supp. 3d 32, 41 (D.D.C. 2024) ................................................ 4

*Nunes v. WP Co. LLC*, 513 F. Supp. 3d 1 (D.D.C. 2020), *aff'd*, 2022 WL 997826 (D.C. Cir. Apr. 1, 2022) ........................................................................................ 16

*Passantino v. United States*, No. 23-cv-00300 (N.D. Ga. Dec. 20, 2023) ............................ 5

*Prins v. Int'l Tel. & Tel. Corp*, 757 F. Supp. 87 (D.D.C. 1991) .................................... 14

*Sai v. Transportation Sec. Admin.*, 326 F.R.D. 31 (D.D.C. 2018) .................................... 12

*Secord v. Cockburn*, 747 F. Supp. 779 (D.D.C. 1990) ............................................ 11, 13

*Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. S&F Mgmt. Co., LLC*, 2018 WL 5044249 (D.D.C. Aug. 16, 2018), *report and recommendation adopted,* 2018 WL 6788727 (D.D.C. Oct. 22, 2018) ...................................................................................... 17

*Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203 (D.C. Cir. 2020) .................................................. 13

*Tah v. Glob. Witness Publg., Inc.*, 991 F.3d 231 (D.C. Cir. 2021) .................................................. 7

*Tavoulareas v. Piro,* 817 F.2d 762 (D.C. Cir. 1987) .................................................. 12

*Time, Inc. v. Pape*, 401 U.S. 279 (1971) .................................................................... 8, 11

*Transworld Prods. Co. v. Canteen Corp.*, 908 F. Supp. 1 (D.D.C. 1995) .................................... 3

*Valle v. Karagounis*, 2020 WL 5505299 (D.D.C. Sept. 11, 2020) ................................................ 2

*Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980) .................................... 5, 6

*Williams v. Cardona*, 2024 WL 4006079 (D.D.C. Aug. 30, 2024) ............................................. 17

*Zimmerman v. Al Jazeera America,* 246 F. Supp. 3d 257 (D.D.C. 2017) .................................. 14

## OTHER AUTHORITIES

RESTATEMENT (SECOND) OF TORTS § 580B (1977) ........................................................................ 14

## RULES

Fed. R. Civ. P. 16(b)(4) ............................................................................................................... 2

Defendant Andrew Weissmann submits this Reply in support of his Motion for Judgment on the Pleadings (ECF No. 45-1 ("Mot." or "Motion")) and in response to Plaintiff Stefan Passantino's Opposition to the Motion (ECF No. 50 ("Opp." or "Opposition")).[1]

## INTRODUCTION

Mr. Passantino repeats over and over that Ms. Hutchinson testified that he did not "tell her to lie" as if that that single averment resolves the matter. Among the fatal problems for Mr. Passantino's defamation claim is that whether he told her to lie is not at issue. The question before the Court is whether it was reasonable to conclude from Ms. Hutchinson's uncontradicted sworn testimony that Mr. Passantino *coached* her to lie.

Ms. Hutchinson's testimony on that score is clear. Ms. Hutchinson, in excruciating and shocking detail, testified that Mr. Passantino gave her advice that all but told her to lie: advising her how she should withhold evidence that she learned from others, how she should focus on protecting the President, and how she could say she did not recall events, even when she did, because Congress would not be able to prove otherwise since they did not know what was in her head.

Although those allegations, if untrue, cry out for a denial, the Complaint does not deny that Mr. Passantino gave Ms. Hutchinson that advice. All that Plaintiff denies is ever explicitly telling Ms. Hutchinson to lie. Indeed, Plaintiff relies on the truth of Ms. Hutchinson's testimony when she said that he did not explicitly tell her to lie. But now he objects to the Court relying on anything else Ms. Hutchinson said in that same testimony, even though he has failed to allege that she is wrong factually about the advice he gave her, and even when her allegations of Plaintiff's improper conduct are literally in the same paragraph as the averment that he claims is truthful.

---

[1] This Reply incorporates the terms as defined in the Motion. Page citations to the Motion and Opposition refer to the ECF pagination at the top of the page.

Mr. Passantino has to admit that months before Mr. Weissmann's Tweet, members of Congress, the press, and the bar concluded from Ms. Hutchinson's testimony that Mr. Passantino coached her to lie. Mr. Passantino himself would describe it that way (including to use the verb coaching) to Tucker Carlson. The fact that so many people drew precisely the same conclusion as the Tweet readily defeats Mr. Passantino's burden to sufficiently plead fault, whether actual malice (which should govern the action) or negligence is the operative legal standard, and thus this is where this Reply begins. *Infra* § I.

The same evidence also demonstrates that the Complaint fails because there is no material difference between the contents of the Tweet (the alleged defamation) and Ms. Hutchinson's uncontradicted testimony about the legal advice she received from Mr. Passantino (the pleaded truth). Not only does Mr. Passantino not deny that he told Ms. Hutchinson exactly what she said he advised her to do, he affirmatively relies upon the truthfulness of Ms. Hutchinson's testimony about how Mr. Passantino prepared her to testify and the substance of what he conveyed (indeed, the Complaint suggests Ms. Hutchinson was all too willing to go along with his strategy). The unavoidable consequence of Mr. Passantino's strategic decision to embrace the accuracy of Ms. Hutchinson's testimony about him is that it negates his ability to plead falsity. *Infra* § II.

Accordingly, the Court should enter judgment on behalf of Mr. Weissmann and deny Mr. Passantino's request for leave to amend.[2]

---

[2] Because the March 28, 2025 deadline to amend the pleadings has passed, any forthcoming attempt to amend would be untimely and require Mr. Passantino to meet a "good cause" standard, which he cannot do based on his failure to state a claim. *See* Fed. R. Civ. P. 16(b)(4); *Valle v. Karagounis*, 2020 WL 5505299, at *3 (D.D.C. Sept. 11, 2020); *Lurie v. Mid-Atl. Permanente Med. Group, P.C.*, 589 F. Supp. 2d 21, 23–24 (D.D.C. 2008).

## ARGUMENT

## I.    THE OPPOSITION CONFIRMS THAT THE COMPLAINT DOES NOT PLEAD ANY FACTS DEMONSTATING FAULT.

### A.    Mr. Passantino Fails To Plead Facts Demonstrating Actual Malice.

Mr. Passantino's theory of this lawsuit—that the Tweet was "of and concerning" him even though it solely referred to a lawyer for Ms. Hutchinson and did not mention him by name—supports finding he assumed "special prominence in the resolution of public questions" (here, the work of the Select Committee). *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *Dameron v. Wash. Mag., Inc.*, 779 F.2d 736, 742 (D.C. Cir. 1985) (finding "it was partly because of the defendant's public notoriety that he was identifiable at all from the oblique reference" in magazine article that "never mentions Dameron's name"); ECF Nos. 45-8, 45-13 to -19. Whether voluntarily or involuntarily, Mr. Passantino has become a limited purpose public figure in connection with Ms. Hutchinson's testimony before the Select Committee, which obligates him to plead facts adequate to demonstrate actual malice. He has not done so.

### 1.    Mr. Passantino is a limited purpose public figure.

Mr. Passantino concedes two out of the three prongs of the "limited-purpose-public-figure" test: (1) the Select Committee and the witnesses before it is a "matter of public controversy and (2) the alleged defamation was "germane" to his role in it. *Compare* Mot. at 35–37 (citing cases), *with* Opp. at 21–23; *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) ("when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case" (citation omitted)); *accord In re Papst Licensing GMBH & Co. KG Litig.*, 602 F. Supp. 2d 22, 24 (D.D.C. 2009); *Transworld Prods. Co. v. Canteen Corp.*, 908 F. Supp. 1, 5 (D.D.C. 1995). Accordingly, the Court only need determine whether Mr. Passantino assumed a "special

prominence in the resolution of public questions" to find he is a limited purpose public figure. *Gertz*, 418 U.S. at 351.[3]

Mr. Passantino is wrong to argue that it is not appropriate to make the limited purpose public figure finding "at this stage in the litigation." Opp. at 23. Whether a defamation plaintiff is a public figure is "a question of law to be resolved by the Court" and is appropriate at the pleadings phase where, as here, all of the facts necessary to make such a determination are properly before the Court. *Montgomery v. Risen*, 197 F. Supp. 3d 219, 255 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017) (citation omitted); *Mason v. Am. Prospect, Inc.*, 2024 WL 4345855, at *12–15 (D.D.C. Sept. 30, 2024) (AliKhan, J.). Mr. Passantino's own conduct, words, and theory of this lawsuit, along with additional materials properly before the Court, demonstrate that he has assumed such a role, whether voluntarily or involuntarily.

The incorporated testimony and judicially noticed articles demonstrably disprove Mr. Passantino's assertion that he did not "'thrust' himself to the forefront of the public controversy" and acted "merely" as "an attorney" "representing a witness" before the Select Committee. Opp. at 22. Rather than Ms. Hutchinson calling him, the plaintiff solicited the client: on February 2, 2022, Mr. Passantino proactively contacted Ms. Hutchinson, whom he had not met previously, to inform her that he would serve as her attorney at no cost to her for the purpose of responding to the Select Committee's subpoenas. *See* Mot. at 11 (citing ECF No. 45-3 at 21:3–22:14, 21:16–

---

[3] Notwithstanding Mr. Passantino's opinion that it is "bizarre for Defendant to suggest that Mr. Passantino is required to allege facts to show that he is a private figure" (Opp. at 23 n.11), a defamation plaintiff must allege that he is a private figure to the extent he intends to advance such a claim. *See Freeman v. Giuliani*, 2022 WL 16551323, at *9 (D.D.C. Oct. 31, 2022) (plaintiff "must" allege that he "is a private figure"); *see Noble v. District of Columbia*, 725 F. Supp. 3d 32, 41 (D.D.C. 2024) (court is not obligated to "fill in the gaps" in poor pleading).

17).[4] Aware that this was a matter of intense public import and interest, he attempted to shape her testimony by *inter alia* encouraging her to "focus on protecting the President" and avoid answering questions about certain events even if she had knowledge about them. ECF No. 45-3 at 35:12–36:18 & 51:1–3. Then, Mr. Passantino proactively spoke to journalists about his representation of Ms. Hutchinson and, in the case of *The New York Times*, against his client's wishes. ECF No. 45-3 at 99:21-100:16); *see also* ECF No 45-10 at 123 ("The lawyer shared the information with the press over her objection.").[5] Mr. Passantino again spoke to the media about his representation of Ms. Hutchinson in December 2022. *See* ECF No. 45-8 & ECF No. 45-14.[6]

Mr. Passantino inserted himself into the controversy by representing multiple witnesses in a high-profile, national, and widely seen investigation, "purposely trying to influence the outcome" of the Select Committee's work while knowing that he "could realistically have been expected, because of his position in the controversy, to have an impact on its resolution." *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980). Furthermore, he went "above and beyond simple legal representation" by seeking "substantial publicity for this case" including by speaking with the media. *Doe No. 1 v. Burke*, 91 A.3d 1031, 1043 (D.C. 2014); *accord Waldbaum*, 627 F.2d at 1300 (affirming supermarket CEO was a limited purpose public figure by becoming "an activist, projecting his own image" and helping shape the press); *Fells v. Serv. Employees Int'l*

---

[4] Mr. Passantino did not limit himself to one high-profile client in this matter; he represented six other witnesses before the Select Committee. Compl. ¶ 14; Complaint, *Passantino v. United States*, No. 23-cv-300, ECF No. 1 (N.D. Ga. Dec. 20, 2023), ECF No. 1.

[5] Ms. Haberman subsequently published an article referencing Ms. Hutchinson's third interview. *See* Maggie Haberman & Luke Broadwater, *Trump Said to Have Reacted Approvingly to Jan. 6 Chants About Hanging Pence*, N.Y. Times (May 25, 2022), nytimes.com/2022/05/25/us/politics/trump-pence-jan-6.html.

[6] *See also* Maggie Haberman & Luke Broadwater, *Lawyer for Key Jan. 6 Witness Seeks to Rebut Panel's Claim of Interference*, N.Y. Times (Dec. 20, 2022), nytimes.com/2022/12/20/us/politics/stefan-passantino-cassidy-hutchinson-jan-6.html.

*Union*, 281 A.3d 572, 584 (D.C. 2022) (finding public figure by virtue of "his role as a high-level union representative who frequently spoke in the press"). Mr. Passantino's reliance on dicta in *Gertz* to predict a catastrophic result that "would render every attorney, in any high profile case," a limited purpose figure if the Court finds he is one ignores all the ways in which his conduct went beyond solely serving as counsel to a high-profile individual. Opp. at 22. As to his argument that the Court should not make such a finding because "he provided standard legal advice" (Opp. at 23), that allegation is not in the Complaint, is belied by Ms. Hutchinson's uncontradicted testimony, and is irrelevant to whether he assumed a role of "special prominence."

Even if (assuming *arguendo*) Mr. Passantino's own actions do not establish that he voluntarily thrust himself into the controversy, the Court should find him to be an involuntary limited public figure as a target of media "scrutiny" with the ability "to reply to attacks through the press." *Waldbaum*, 627 F.2d at 1292 n.9, 1295 n.18; *see also Dameron*, 779 F.2d at 742 (affirming air traffic controller is a limited purpose public figure because he "became embroiled, through no desire of his own, in the ensuing controversy over the causes of" an airplane crash by being on duty at the time of the crash, testifying about his role in the crash, and by having his "name and likeness" featured in news reports); *Montgomery*, 197 F. Supp. 3d at 257 (finding limited purpose public figure because "newspaper coverage regarding the government's use" of his software "well predated publication" of alleged defamation); *accord Gertz*, 418 U.S. at 352. The Court noted in its opinion on the initial Motion to Dismiss that after Ms. Hutchinson's testimony at the December 19 Hearing and release of her interview transcripts, "multiple news outlets claimed that the 'lawyer' referred to by the Select Committee member was Mr. Passantino." MTD Order at 5.

Mr. Passantino's own words during an interview with Tucker Carlson confirm that the

December 19 Hearing and transcript release generated widespread media scrutiny *about him*:

> "… it **became extraordinarily well known** that she was an extremely powerful witness when she testified live before the Committee and as one of the elements of providing that testimony **there was significant discussion of the fact that she had previously had this Trump lawyer who had <u>effectively coached her not to tell the truth, had coached her to say,</u> I don't recall when in fact she did recall all of those things were being accused of me, as the lawyer**."



*See* The Tucker Carlson Show, *Stefan Passantino: Liz Cheney's J6 Crimes & Mission to Destroy Any Lawyer Who Dares Represent Trump* at 13:07–45 (YouTube, Nov. 2, 2024) youtube.com/watch?v=Xin0OC5e66A (YouTube Video embedded above for ease of reference) (emphasis added) ("Carlson Interview").[7]

        2.   <u>Mr. Passantino has not adequately alleged actual malice.</u>

The Complaint does not allege facts that meet the "famously daunting" standard of actual malice, and none of the arguments in the Opposition detailed below demonstrate otherwise. *Tah v. Glob. Witness Publ'g., Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021).

        *i.*     *The September 14 Interview forecloses finding actual malice.*

There are multiple reasons for the Court to reject Mr. Passantino's attempt to plead actual malice by (wrongly) asserting that the Tweet was a "complete and utter fabrication" based on his

---

[7] Mr. Passantino does not refute the accuracy of his own statement to Tucker Carlson, but argues it is "inapt[]" because it occurred a year after the Tweet. The timing of the Carlson Interview does not change the fact that Mr. Passantino admitted the existence of "significant discussion" about him and his conduct relating to Ms. Hutchinson's testimony prior to the publication of the Tweet.

purposeful reliance of an isolated part of Ms. Hutchinson's testimony in the September 14 Interview. Opp. at 25–29. Ms. Hutchinson's testimony that he "never told me to lie" does not, as Mr. Passantino argues, serve as "evidence that Mr. Passantino never coached Ms. Hutchinson to lie." Opp. at 27–28; *accord* Compl. ¶¶ 1, 7, 17, 19, 27 (citing and quoting page 42 of September 14 Interview, ECF No. 45-3). Of course, as Mr. Passantino's own assessment of her testimony underscores, it can be true that Mr. Passantino both told Ms. Hutchinson not to lie and also coached her to do so. In addition to demanding the suspension of logical reasoning, crediting Mr. Passantino's theory of actual malice would require ignoring what Ms. Hutchinson actually said, including in the very part of the testimony he cites (reflected in italics below, with the bolded surrounding context he excludes):

> "… so now I've moved on from where **he sort of instructed me not to answer certain topics that I raised with him or to** — *Stefan never said* — *I want to make this clear to you: Stefan never told me to lie. He specifically told me, 'I don't want you to perjure yourself,* **but 'I don't recall' isn't perjury. They don't know what you can and can't recall.'**
>
> So, even as we had gone through, you know, the Beast story or the pardon situations and the magnetometers, stories like that, I just want to make sure I'm not making it sound like — now, I have a different perspective now after securing my lovely legal team. But *I just want to make sure that I make it clear that he didn't say, 'I want you to lie and say that you don't recall on these things when I know you recall.'* **It was a, 'You're not lying if you say you don't recall.'**
>
> So I just want — I know it's little, but I just want it to be clear, because I — *he didn't tell me to lie. He told me not to lie.* **But 'I don't recall' is not a lie in Stefan's** — "

*See* ECF No. 45-3 at 43:9–21; Mot. at 25–26 (citing Compl. ¶¶ 1–21); *see also* Mot. at 10–18; *Time, Inc. v. Pape*, 401 U.S. 279, 289 (1971) (finding *Time Magazine* did not publish an article about a Civil Rights Commission ("CRC") report on police brutality with actual malice because the article was a reasonable interpretation of "the totality of what was said" in CRC report "as a whole"); *Bose Corp. v. Consumers Union of U.S. Inc.*, 466 U.S. 485, 511–12 (1984) (holding no

actual malice where challenged statement reflected "rational interpretations" of the underlying event).[8]

The portion of Ms. Hutchinson's testimony on which Mr. Passantino relies itself negates his actual malice argument; the rest of her related testimony destroys it. Ms. Hutchinson testified (without contradiction by Mr. Passantino) that he conveyed the following advice to her in advance of or during breaks from her testimony:

- "'I don't recall' is an entirely acceptable response" to certain questions because the Select Committee does not "know" what she knows and does not "know" that she "can recall some of these things" and does not "know" that she "know[s] a lot";

- "the less" she remembered "the better";

- she did not "need to testify" to conversations that happened if she "just overheard" them;

- her "go-to" response should be to say "'I don't recall'";

- she should "use" "I don't recall" as "much as" she deemed "necessary" where she did not have "100%" recall;

- it is not "lying if you say you don't recall"; and

- she should "focus on protecting the President" because the Select Committee would have all the information they ask her about from other people "even if" she was "entirely forthcoming."

Mot. at 11–18.

The Court need only compare the Tweet with the full (or even partial) context of Ms. Hutchinson's testimony to reject Mr. Passantino's conclusory assertion that the Tweet was an "utter fabrication" or based on a disregard of Ms. Hutchinson's testimony. To the contrary, Ms. Hutchinson's full testimony provides all the evidence the Court needs to find that Mr. Weissmann

---

[8] *See Kelley v. Fed. Bureau of Investigation*, 67 F. Supp. 3d 240, 280 (D.D.C. 2014) ("Since the article is specifically referenced in the amended complaint, the Court need not accept plaintiff's characterization of the document, but it may consider the document itself."); *Greene v. Nguyen*, 2005 WL 3275897, at *6 (D.D.C. Sept. 7, 2005) ("Although the court must accept the plaintiff's version of the facts as true, the court need not accept "the plaintiff's *characterization* of the facts." (emphasis in original)).

had reason to believe that Mr. Passantino coached Ms. Hutchinson to lie. The Court can make such a finding even without reaching whether Ms. Hutchinson's testimony was truthful (although here Mr. Passantino studiously avoids denying it). *See Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 144 (D.D.C. 2017) (dismissing claim "even where the defendants 'acted on the basis of a biased source and incomplete information'" (quoting *Lohrenz v. Donnelly*, 350 F.3d 1272, 1284 (D.C. Cir. 2003)); *Carpenter v. King*, 792 F. Supp. 2d 29, 38 (D.D.C. 2011), *aff'd*, 473 F. App'x 4 (D.C. Cir. 2012) (dismissing claim against defendant who relied on "credible, knowledgeable sources of information"); *cf. McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1507 (D.C. Cir. 1996) (affirming lack of fault where defendant "had reason to believe" congressional testimony, which was the "only testimony" he heard, and "could not have known" that the witness was lying).

Plaintiff's own admission that other third parties (the media and (at a minimum) dozens of lawyers) "made similar accusations" about him coaching Ms. Hutchinson to lie further affirms that implausibility of his actual malice arguments.[9] Mr. Passantino does not attempt to explain how it possibly could be true that Mr. Weissmann made up such a claim out of whole cloth when so many third parties made the same assertion months before the Tweet. Having no way to reconcile the news reports and Bar Complaints with his theory of actual malice, Mr. Passantino asks the Court to ignore them because "there is no record evidence" that Mr. Weissmann "relied on any of those

---

[9] Mr. Passantino "does not concede that the Court should take judicial notice of media coverage of Mr. Hutchinson's testimony" but does not provide any reasoning or legal support for why the Court should not do so, and without addressing that the Court already has done so for a majority of the cited articles. *Compare* Opp. at 17 n.4, *with* Mot. at 9–10. The same footnote goes on to insist that the Court should take judicial notice of two additional articles from two conservative news outlets. Opp. at 17 n.4. Mr. Weissmann does not object to the Court taking notice of those articles solely for the fact that they exist without conceding their relevance for the reasons discussed.

materials." Opp at 26. But the news articles and Bar Complaints are relevant irrespective of whether Mr. Weissmann relied on them because the fact that so many others independently drew the exact same conclusion as Mr. Weissmann months before illustrates the lack of facts supporting the claim that he fabricated or ignored evidence. *See* Mot. at 26; *see also Pape*, 401 U.S. at 289; *Bose*, 466 U.S. at 511–12.

<blockquote>
ii.      *Other "publicly available transcripts" and pleaded text messages are irrelevant to Mr. Weissmann's state of mind.*
</blockquote>

Mr. Passantino argues that Mr. Weissmann ignored "publicly available transcripts" and the text messages cited at paragraph 13 in the Complaint ("Text Messages"), which the Opposition (but not the Complaint) claims demonstrate that Mr. Passantino encouraged Ms. Hutchinson's "compliance." Opp. at 26. To extent that the amorphous reference to "publicly available transcripts" refers to Ms. Hutchinson's first three interviews, they do not provide a basis to find actual malice because they have nothing to do with the advice Mr. Passantino provided to Ms. Hutchinson in advance of and during breaks from her interviews with the Selection Committee. Mot. at 12–15, 29–33; Opp. at 25–26. Mr. Passantino's characterization of the "publicly available transcripts" as exculpatory is contradicted by, among other things, Ms. Hutchinson's testimony that Mr. Passantino told her that her "best move" would be "refusing to cooperate" even it meant she could be held in contempt. ECF No. 45-3 at 108:13–21.

The Text Messages do not support a finding of actual malice for the same reasons—they do not contradict, or even relate to, whether Mr. Passantino coached Ms. Hutchinson to lie to the Select Committee. Nor are they probative of Mr. Weissmann's state of mind because neither the Complaint nor the Opposition claims that he knew of the Text Messages (which were not then public) at the time of the Tweet. *See Secord v. Cockburn*, 747 F. Supp. 779, 792 (D.D.C. 1990) ("it is hornbook libel law that post-publication events have no impact whatever on actual malice

as it bears on this lawsuit since the existence or non-existence of such malice must be determined as of the date of publication" (citation omitted)); *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 594 (D.C. Cir. 2016) (finding plaintiff's reliance on collateral electronic correspondence "misplaced" and provides no evidence of subjective doubt where the substance of the electronic correspondence does not concern the defendant's challenged statement).

>   iii.  Mr. Passantino's claim of "partisan animus" cannot substantiate actual malice as a matter of law.

Mr. Passantino resorts to a claim of purported "partisan animus" to support the pleading of actual malice. *See* Opp. at 25–29. He does not, however, address the binding case law holding that such allegations are insufficient as a matter of law. *Compare id.*, *with* Mot. at 38–39 (citing *Couch v. Verizon Commc'ns, Inc.*, 2021 WL 4476698, at *5 (D.D.C. Sept. 30, 2021), *aff'd*, 105 F.4th 425 (D.C. Cir. 2024); *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019); *Tavoulareas*, 817 F.2d at 795). The Opposition provides no basis for the Court to ignore the precedent of this Circuit holding that conclusory assertions of animus are insufficient to plead actual malice.

>   iv.  Mr. Passantino's reliance on unpled allegations is improper and unavailing.

The balance of the Opposition attempts to substantiate actual malice by relying on supposed facts that are not in the Complaint, and thus cannot be part of the Court's consideration. *See Sai v. Transportation Sec. Admin.*, 326 F.R.D. 31, 33 (D.D.C. 2018). Even if the Court could consider the unpled allegations, they do not support finding actual malice. The Opposition asserts that Mr. Weissmann should have known about some unspecified "evidence" that Mr. Passantino claims "the D.C. and Georgia bars presumably considered when dismissing" the Bar Complaints in February 2024. Opp. at 28 & n.9 (linking to the Bar Letters). But this supposed evidence from the Bar Letters postdated the Tweet. And the Opposition does not explain what "evidence" Mr. Passantino believes was the basis for those dismissals, or why Mr. Weissmann should have known

about it at the time of the Tweet. *See McFarlane*, 91 F.3d at 1508; *Secord*, 747 F. Supp. at 792. Even assuming the Bar Letters offer any insight into Mr. Weissmann's state of mind at the time of the Tweet's publication, their contents do not support Mr. Passantino's characterization of having been "cleared of these false claims" and "exact charges" and instead reflect decisions not to proceed with formal investigations based on the limited record therein. *Compare* Opp. at 19, 21, *with* Opp. at n.9 (link to Bar Letters).[10]

Finally, Mr. Passantino argues that Mr. Weissmann "should have known better" than to trust Ms. Hutchinson's testimony because she had "at best a neophyte understanding of legal proceedings, deposition testimony, and legal advice" and, he now claims, a "desire" to "spread gossip and hearsay" in her testimony. Opp. at 24. Mr. Passantino cites but does not distinguish binding law holding that "should have known" allegations are insufficient as a matter of law to establish actual malice. *See* Mot. at 39 (citing cases holding "should have known better" insufficient to establish actual malice); *Jankovic*, 822 F.3d at 589 (cited in Opp. at 21, 23) ("it is not enough to show that defendant should have known better" to establish actual malice) (citation omitted). By opining on what Mr. Weissmann "*should have known*," Mr. Passantino defeats his own actual malice argument by admitting he lacks facts to demonstrate that Mr. Weissmann actually doubted or had specific reasons to doubt that Ms. Hutchinson was testifying truthfully. *Jankovic*, 822 F.3d at 590 ("it is only when a plaintiff offers evidence that 'a defendant has reason to doubt the veracity of its source' does 'its utter failure to examine evidence within easy reach or

---

[10] Ms. Hutchinson confirmed to *The New York Times* through her attorney that she "chose not to participate in the reviews of the bar complaints brought by others seeking to discipline Mr. Passantino since she wanted to put the well-documented issues related to his representation of her in the past," not because she retracted her testimony. Luke Broadwater & Charlie Savage, *Ethics Panels Dismiss Complaints Against Former Lawyer for Jan. 6 Witness*, N.Y. Times (May 19, 2024), nytimes.com/2024/03/19/us/politics/stefan-passantino-cassidy-hutchinson-jan-6.html.

to make obvious contacts in an effort to confirm a story' demonstrate reckless disregard" (citation omitted)); *accord Deripaska*, 282 F. Supp. 3d at 144; *Carpenter*, 792 F. Supp. 2d at 38; *cf. McFarlane*, 91 F.3d at 1507.[11] Plus, Mr. Passantino's own reliance on the veracity of Ms. Hutchinson's testimony about what he told her defeats any claim that anyone *else* should have doubted its truth.

### B.    Mr. Passantino Fails To Meet The Negligence Standard.

Judgment on the pleadings is warranted even if Mr. Passantino only has to plead facts sufficient to demonstrate negligence. *See* Mot. at 34–35; *Carpenter*, 792 F. Supp. 2d at 36 (granting motion to dismiss where plaintiff failed to allege negligence); *accord Prins v. Int'l Tel. & Tel. Corp.*, 757 F. Supp. 87, 90 (D.D.C. 1991). The Opposition spends only two pages on negligence, and the only Complaint allegation it cites is, once again, "Ms. Hutchinson's own testimony" that "she was explicitly told to tell the truth." Opp. at 24; *accord* Compl. ¶¶ 1, 7, 17, 19, 27 (citing and quoting page 42 of September 14 Interview, ECF No. 45-3). But for the reasons discussed above, the actual September 14 Interview provided Mr. Weissmann with "reasonable grounds for believing" that Mr. Passantino coached Ms. Hutchinson to lie to the Select Committee. *See* RESTATEMENT (SECOND) OF TORTS § 580B (1977) (assessing negligence by inquiring whether the defendant "had reasonable grounds for believing that the communication was true"); *Kendrick v. Fox TV*, 659 A.2d 814, 822 (D.C. 1995) (plaintiff bears burden to show "unreasonable failure, under the circumstances, to take care that the statement made was true").

Mr. Passantino, again, attempts to distract from the fact that so many others drew the same conclusion as Mr. Weissmann by stating that Mr. Weissmann "cannot now rely on sources that he

---

[11] Mr. Passantino's reliance on *Zimmerman v. Al Jazeera America, LLC*, is misplaced because in that case, unlike here, the complaint provided facts demonstrating that the defendants knew their source had "questionable motivations." 246 F. Supp. 3d 257, 283 (D.D.C. 2017).

did not previously disclose when there is no record evidence that he actually viewed or otherwise knew of these media articles or bar complaints." Opp. at 24. Mr. Passantino's argument is nonsensical in the context of the *objective* standard of negligence. The negligence calculus does not question what Mr. Weissmann "actually viewed," but rather whether he exercised the same "degree of care which ordinarily prudent persons engaged in the same kind of business usually exercise under similar circumstances." *See Kendrick*, 659 A.2d at 822.[12] Here Mr. Passantino himself admitted during the Carlson Interview that even he would draw the same conclusion from her testimony, but now is asking the Court to find that his own assessment of what she was alleging would constitute negligence. *Supra* at 7. The Court has an ample record before it demonstrating that Mr. Weissmann handled Ms. Hutchinson's testimony with the exact same "degree of care" as did Mr. Passantino, as well as prudent members of the media and the bar. Mr. Passantino's attempt to label all journalists and lawyers that reached the same conclusion as Mr. Weissmann as "partisans"—notwithstanding that they are affiliated for a wide range of organizations and reached the same conclusion he did—does not change the conclusion that they all approached Ms. Hutchinson's testimony in the same manner. *Compare* Opp. at 24, *with* ECF Nos. 45-8, 45-13–45-21.

Mr. Passantino's failure to plead any facts adequate to demonstrate negligence requires the Court to enter judgment against him. *Gertz*, 418 U.S. at 340 (requiring a defamation plaintiff plead facts demonstrating negligence, at a minimum, is a critical First Amended safeguard because the alternative would be "a rule of strict liability that compels a publisher or broadcaster to guarantee the accuracy of his factual assertions may lead to intolerable self-censorship"); *Nunes v. WP Co. LLC*, 513 F. Supp. 3d 1, 9 (D.D.C. 2020), *aff'd*, 2022 WL 997826 (D.C. Cir. Apr. 1, 2022)

---

[12] *See* Mot. at 8–10, 22–23 (citing news articles).

(granting motion to dismiss where plaintiff failed to plausibly plead actual malice and denying motion for leave to file an amended complaint for futility); *accord Carpenter*, 792 F. Supp. 2d at 36.

## II.     THE OPPOSITION CONFIRMS THAT IT IS SUBSTANTIALLY TRUE THAT MR. PASSANTINO "COACHED" MS. HUTCHINSON "TO LIE."

Neither the Complaint nor the Opposition disputes the accuracy of Ms. Hutchinson's testimony about how Mr. Passantino prepared her to testify before the Select Committee. *Compare* Mot. at 11–18, *with* Opp. at 7–9, 11–21. To the contrary, and as discussed throughout the Motion and this Reply, Mr. Passantino attempts to meet his pleading burden by affirmatively relying on the truthfulness of Ms. Hutchinson's testimony about his advice. *See supra* at 1–2, 7–11, 14–16; Opp. at 7 ("The truth is that Mr. Passantino's own client stated, under oath, that Mr. Passantino never instructed her to lie."); *id*. at 8 ("She rightly said on the record…"); *id*. at 9 ("the 'pleaded truth,' which is that [*sic*] Mr. Passantino has pleaded—and Ms. Hutchinson's testimony supports— that he did not coach her to lie"); *id*. at 11 ("…as Ms. Hutchinson herself stated and testified, Mr. Passantino *never* told her to lie); *id*. at 16 ("Mr. Passantino has cited these statements as evidence to support his allegation"); *id*. at 17 ("Mr. Passantino cited to portions of the September Transcript in pleading facts supporting his claim"); *id*. at 19 ("underlying record shows … Ms. Hutchinson herself stated that Mr. Passantino did not coach her to lie"); *id*. at 20 ("the witness plainly recalled that Mr. Passantino specifically told her to tell the truth"); *see also* Opp. at 13 (pointing to "underlying record evidence" to support assertion that "Mr. Passantino did not 'coach' Ms. Hutchinson to lie").[13]

Mr. Passantino attempts to avoid the consequence of his own Complaint affirming the

---

[13] Mr. Passantino's assertion that his claim is not based on the September 14 Interview (Opp. at 17) is flatly contradicted by his extensive reliance on throughout the Complaint and Opposition to support multiple elements of his claim, *supra* at 1–2, 7–11, 14–16.

veracity of Ms. Hutchinson's testimony about him by arguing that the "only thing this Court must accept as 'the pleaded truth' is Mr. Passantino's assertion that he did not coach Ms. Hutchinson to lie, and the fact that Ms. Hutchinson made statements in her deposition consistent with that fact." Opp. at 16. But that is not the law: courts "cannot accord a presumption of truth" to an allegation or credit a characterization that conflicts with a document incorporated by reference. *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. S&F Mgmt. Co., LLC*, 2018 WL 5044249, at *3 (D.D.C. Aug. 16, 2018), *report and recommendation adopted,* 2018 WL 6788727 (D.D.C. Oct. 22, 2018). Where, as here, "the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail." *Id.* at 3 (citation omitted); *Davis v. World Sav. Bank, FSB*, 806 F. Supp. 2d 159, 172 (D.D.C. 2011) (same); *see Williams v. Cardona*, 2024 WL 4006079, at *4 n.2 (D.D.C. Aug. 30, 2024) (AliKhan, J.) (citing *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (explaining that the court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.")); *accord New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 19 (D.D.C. 2021), *aff'd sub nom. New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023) ("the Court does not accept that characterization because it is inconsistent with the text of the 2011 policy, which the FTC quotes in its simultaneously filed Complaint in the related case" (citation omitted)); *Kelley*, 67 F. Supp. 3d at 280 (court "need not accept plaintiff's characterization")); *Greene*, 2005 WL 3275897, at *6 (court need not accept "the plaintiff's *characterization* of the facts" (citation omitted) (emphasis in original)).

The case on which Mr. Passantino heavily relies, *Banneker Ventures, LLC v. Graham*, demands the same result. 798 F.3d 1119, 1128 (D.C. Cir. 2015). In that case, the United States Court of Appeals for the District of Columbia declined to consider the report of an investigation

commissioned by the defendants (the "Bondi Report") "*in toto*" because the complaint "did not purport to" adopt its "factual contents." *Id*. at 1128, 1133–34. The *Banneker* Court expressly narrowed its ruling by opining that a different result would follow if the defendants had been using the Bondi Report to show that "Banneker has mischaracterized the Bondi Report" in the complaint. *Id*. at 1134 n.6 ("Defendants would have been entitled to rely on the Bondi Report to show any inaccuracy in Banneker's allegations about its contents, because a referenced document may always be read 'to evidence what it *incontestably shows.*'" (citation omitted) (emphasis in original)).

Unlike Banneker, Mr. Passantino repeatedly adopts the content of Ms. Hutchinson's testimony in the September 14 Interview as true, and Mr. Weissmann can rely on the same testimony to show that Mr. Passantino has "mischaracterized" its contents. Accordingly, the Court should consider the full contents of the September 14 Interview, rather than a myopic cherry-picked selection, in determining what constitutes the "pleaded truth. Indeed, even if the Court looks only to the very same paragraph of Ms. Hutchinson's testimony that Mr. Passantino pleads is truthful, it contains undisputed factual allegations that amply support describing his advice as coaching her to lie.[14]

The Court should reject various red herrings in the Opposition because none of them is legally or factually relevant to the lack of "material difference" between Ms. Hutchinson's

---

[14] Mr. Passantino wrongly suggests that accepting Mr. Weissmann's substantial truth argument would require it to "accept *all* statements by Ms. Hutchinson in her testimony as the 'pleaded truth.'" *See* Opp. at 11 (emphasis in original). While the Court would be within its authority to consider the entirety of the September 14 Interview as the pleaded truth under the law of this Circuit, it does not need to and can grant the Motion based solely on accepting as true the same part of Ms. Hutchinson's testimony that Mr. Passantino relies on for the truth, specifically page 42 of the September 14 Interview. *See* Mot. at 30.

testimony and the Tweet. *Florio v. Gallaudet Univ.*, 619 F. Supp. 3d 36, 48 (D.D.C. 2022); Mot. at 29–32.

- **"Standard" Legal Advice**. Mr. Passantino in his Opposition attempts to salvage his claim that the Tweet is false by stating on seven separate occasions that his advice to Ms. Hutchinson was "standard." *See* Opp. at 7 ("provided standard legal advice"); *id*. at 15 ("provided her with standard legal advice"); *id*. at 19 ("provided her with standard legal advice"); *id*. at 22 ("provide standard legal advice"); *id*. at 23 ("provided standard legal advice" and "did nothing more than provide standard legal advice"); *id*. at 28 ("standard legal instructions"). Nothing about what Ms. Hutchinson testified Mr. Passantino said to her is (or should ever be) considered standard in the legal profession. In any event, the Complaint does not even use the term "standard" to describe the advice, so Mr. Passantino's belated claim is irrelevant. The label "standard," even if it had been pled, is oddly and disturbingly ambiguous in light of his not refuting what she alleged. Finally, it is not a defense to providing improper advice that you did not provide uniformly improper advice, particularly where you do not deny the specific allegations of what advice you provided.

- **Breitbart and Washington Examiner Article**. The Opposition relies on two articles from *Breitbart* and *Washington Examiner* to claim that "reasonable readers interpreted her testimony" to reflect that Ms. Hutchinson is a "fabulist who wanted to distance herself from prior testimony so that she could spread inflammatory gossip and hearsay." Opp. at 17. Neither article appears in the Complaint, but even if Mr. Passantino could amend by opposition, they do not change the conclusion that the Tweet is substantially true. Neither article relates to the credibility of Mr. Hutchson's testimony about Mr. Passantino (who is not mentioned in them directly or indirectly) and instead relate solely to attempts to discredit Ms. Hutchinson's substantive testimony about what occurred on or around January 6, which is not testimony the Court needs to rely on to find substantial truth. ECF Nos. 50-2 & 50-3.

- **Bar Letters and Congressional Materials:** The Opposition cites three categories of materials—the Bar Letters; a December 17, 2024 Interim Report from the United States House of Representatives Committee on House Administration ("Interim Report"); and December 17, 2025 testimony of Jack Smith (collectively, "Post-Complaint Documents")—all of which the Court cannot consider because they post-dated the Complaint and, therefore, are not cited therein. *See id*. at 18, 20. Mr. Passantino attempts to but cannot rely on the truth of the content contained within the Post-Complaint Documents because they are not incorporated by reference, cited, or integral to the Complaint. *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). At most, he can ask the Court to take judicial notice of them, but even so they do not offer any probative value as to

substantial truth. As explained above, neither of the Bar Letters "exonerate" Mr. Passantino or reflect whether the Tweet and Ms. Hutchinson's testimony would have a different effect on the reader. The part of the Interim Report to which Mr. Passantino cites does not accuse Ms. Hutchinson of testifying untruthfully about his legal advice or challenge her recounts of what he told her. Opp. at 18. The same is true as to Mr. Smith's testimony, which relates to Ms. Hutchinson's substantive testimony (e.g., about the Beast and weapons at the Ellipse) and not about Mr. Passantino or the advice he provided. *See* U.S. HOUSE COMMITTEE ON THE JUDICIARY, Deposition of: Jack Smith (Dec. 17, 2025) at 185-89, judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/2025-12/Smith-Depo-Transcript_Redacted-w-Errata.pdf. [15]

\*\*\*

Mr. Passantino's affirmative reliance on the truthfulness of Ms. Hutchinson's testimony about his legal advice is fatal to his lawsuit because there would be no "different effect on the mind of the reader" between that advice (the pleaded truth) and stating that Mr. Passantino "coached" Ms. Hutchinson "to lie" (the alleged defamation). *See* Mot. at 11–18 (citing cases); *see also Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1129–30 (10th Cir. 2017) (affirming district court finding that "gist" of allegedly defamatory episode describing a seminar on annuity products and financial planning was not materially false because it "was not likely to cause reasonable people to think significantly less favorably of plaintiff if they had viewed the seminar recording in its entirety" (internal quotation marks and citation omitted)); *Marier v. Lance, Inc.*, 2009 WL 297713, at \*2 (3d Cir. Feb. 9, 2009) (affirming statement accusing plaintiff of being "escorted off the property" by police was substantially true because its "'sting'" was "not literally whether or not they were actually escorted off of the property by the police" but rather the

---

[15] Mr. Passantino's reliance on *Moldea* is not helpful because accepting Mr. Passantino's allegations—what he admits, what he incorporates, and what he does not deny—permits a finding of substantial truth at this stage. *See Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1150 (D.C. Cir.), *modified*, 22 F.3d 310 (D.C. Cir. 1994). ("When a trial court can find as a matter of law that a challenged publication is substantially true, then it may properly grant judgment for the defendant.").

"undisputed" fact that "police had to get involved"); *cf. Fonville v. District of Columbia*, 38 F. Supp. 3d 1, 12 (D.D.C. 2014) (considering substantial truth defense by comparing allegedly defamatory statements in newspaper article with the underlying police report on which Plaintiff relied for the truth).[16]

None of Mr. Passantino's arguments in the Opposition change that a reasonable reader would (and did) understand Ms. Hutchinson to be saying exactly what the Tweet conveyed: Mr. Passantino coached her to say she did not remember events irrespective of whether she did and that the Select Committee would not be able to discern it as they did not know what is in her head. *See supra* at 7 (Passantino's admission in Carlson interview). This advice describes textbook coaching, even leaving aside Ms. Hutchinson's other uncontradicted statements about the advice she received, such as to focus on protecting the president and refuse to recount certain conversations even if the Select Committee asked questions about them.

The Court should grant the Motion and deny Mr. Passantino leave to amend because the deadline to amend pleadings has long since passed and Mr. Passantino lacks a good-faith basis to do so.[17] Indeed, the most natural thing in the world, if true, would have been for Mr. Passantino to deny each and every factual allegation about the improper legal advice made by Ms. Hutchinson at the time he filed the Complaint. But he made the strategic decision not to deny and rather to

---

[16] Mr. Passantino discusses *Arpaio v. Zucker*, 414 F. Supp. 3d 84 (D.D.C. 2019) but ignores that in that case, unlike here, all of the defendants had admitted that their statements were erroneous and related to content where the sting of the alleged defamation (that Arpaio had been criminally convicted and spent time in prison) would leave a different effect than the truth (that he was convicted of contempt of court and pardoned). In this case, the sting and the truth are one and the same, i.e. that Mr. Passantino coached Ms. Hutchinson to lie to the Select Committee, which is more akin to the finding in *Arpaio* that the statements of one of the defendants (CNN) was substantially true because there was not a material difference between the sting and the truth.

[17] *See supra* note 2.

embrace the truth of her testimony about his advice, and it is on that chosen record that the Court should rule against him.

## **CONCLUSION**

For the reasons articulated in the Motion and this Reply, Mr. Weissmann respectfully moves the Court to enter judgment on the pleadings in his favor.

Dated: February 13, 2026

Respectfully submitted,

*/s/Meryl C. Governski*
Meryl C. Governski
Linda E. Halfacre (*pro hac vice*)
DUNN ISAACSON RHEE LLP
401 9th Street NW
Washington, DC 20004
Phone: (202) 240-2927
mgovernski@dirllp.com
ehalfacre@dirllp.com

Jonathan I. Kravis
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW, Suite 500E
Washington, DC 20001-5369
Phone: 202-220-1130
jonathan.kravis@mto.com

Faith E. Gay
Corey Stoughton
Rachel Slepoi (*pro hac vice*)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Phone: (212) 390-9001
fgay@selendygay.com
cstoughton@selendygay.com
rslepoi@selendygay.com

*Counsel for Defendant Andrew Weissmann*