**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEFAN PASSANTINO,<br>*Plaintiff*,<br>v.<br>ANDREW WEISSMANN,<br>*Defendant*. | Civil Action No. 23 - 2780 (LLA) |

**MEMORANDUM OPINION**

Plaintiff Stefan Passantino brings this action against Defendant Andrew Weissmann, alleging defamation stemming from a September 2023 social media post. In the post, Mr. Weissmann referred to Mr. Passantino—a lawyer—as someone "who coached [a witness appearing before Congress] to lie." ECF No. 1 ¶ 18. Mr. Weissmann moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). ECF No. 45. Mr. Passantino has moved for a video conference to resolve outstanding discovery disputes. ECF No. 48. For the reasons that follow, the court will grant Mr. Weissmann's motion and deny as moot Mr. Passantino's motion.

## I. FACTUAL BACKGROUND

In resolving Mr. Weissmann's motion for judgment on the pleadings, the court will assume that the facts alleged in Mr. Passantino's complaint are true. *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008); *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018).

Mr. Passantino has been a lawyer for more than thirty years. ECF No. 1 ¶ 5. In 2017 and 2018, he served as a senior lawyer in the Trump administration. *Id.* ¶ 6. Since then, he has engaged in private practice. *Id.*

In 2021, the House of Representatives established a Select Committee to investigate the January 6, 2021 attack on the U.S. Capitol. *Id.* ¶ 7. As part of its investigation, the Select Committee interviewed numerous witnesses, including Cassidy Hutchinson, a former special assistant to President Trump who had been serving under the direction of White House Chief of Staff Mark Meadows on January 6, 2021. *Interview of Cassidy Hutchinson (Feb. 23, 2022) Before the Select Comm. to Investigate the January 6th Attack on the U.S. Capitol*, 117th Cong., 2d Sess. (2022) ("Feb. 13 Deposition"), Tr. 9:2-20.[1]

Mr. Passantino represented Ms. Hutchinson at her first three closed-door Select Committee depositions on February 23, March 7, and May 17, 2022. ECF No. 1 ¶ 9. In early June 2022, after the third deposition, Ms. Hutchinson fired Mr. Passantino and retained new counsel. ECF No. 1

[1] When ruling on a motion for judgment on the pleadings, the court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the court may take judicial notice." *Tapp v. Wash. Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 392 (D.D.C. 2016) (quoting *Allen v. U.S. Dep't of Educ.*, 755 F. Supp. 2d 122, 125 (D.D.C. 2010)). Relevant here, "where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008) (quoting *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd* 38 F. App'x 4 (D.C. Cir. 2002)). Mr. Passantino's complaint references, cites, and quotes Ms. Hutchinson's various depositions before the Select Committee. *See* ECF No. 1 ¶¶ 9 & nn.1-3, 10-12, 16 & n.5, 17 & nn.6-7. But Mr. Passantino disputes the veracity of most of Ms. Hutchinson's September 14 deposition, *see* ECF No. 50, at 9-10, and quotes it only to the extent that it supports his factual allegations, *see* ECF No. 1 ¶¶ 16-17. The court thus recounts Ms. Hutchinson's testimony not for its truth, but for its existence as a public record of which the parties agree Mr. Weissmann had notice. *See* ECF No. 1 ¶ 27 (contending that Mr. Weissmann was negligent in light of the "publicly available transcripts of Ms. Hutchison's testimony); ECF No. 50, at 18 (arguing that a "reasonable reader" of Ms. Hutchinson's testimony "should have known" that her statements were false).

¶ 16. She subsequently gave a fourth, televised deposition on June 28, which received substantial media coverage. *See, e.g.*, Maggie Haberman, *Cassidy Hutchinson Stuns With Testimony About Trump on Jan. 6*, N.Y. Times (June 28, 2022), https://perma.cc/2YRT-3PZL; Tyler Olson & Kelly Laco, *January 6 hearing: Top 5 moments of explosive Cassidy Hutchinson testimony on Trump, attack on Capitol*, Fox News (June 28, 2022), https://perma.cc/33EC-Z7Z6; Aaron Blake, *Cassidy Hutchinson's explosive—and damning—Jan. 6 testimony*, Wash. Post (June 28, 2022), https://perma.cc/RQD2-8YYA.[2]

After her fourth deposition, Ms. Hutchinson sent a letter to the Select Committee stating that she intended to "waive [her] attorney-client privilege [with Mr. Passantino] in order to share information with the [C]ommittee that[] [was] relevant to [her] prior testimony." *Continued Interview of Cassidy Hutchinson (Sep. 14, 2022) Before the Select Comm. to Investigate the January 6th Attack on the U.S. Capitol*, 117th Cong., 2d Sess. (2022) ("Sep. 14 Deposition"), Tr. 5:7-11. The Select Committee scheduled her for a fifth, closed-door deposition for September 14, 2022. *See id.* 1:15. According to Ms. Hutchinson, she had asked a friend to "back channel to the committee and say that there [were] a few things that [she] want[ed] to talk about." *Id.* 85:24-25; *id.* 86:15-16 (explaining that she did "not [want to] let Stefan [Passantino] know that [she was] back channeling for this interview").

At her fifth deposition, Ms. Hutchinson testified about the preparation she and Mr. Passantino had conducted ahead of her first Select Committee deposition. Specifically, she told the Committee that she and Mr. Passantino had met "for a couple hours" on February 16, 2022

---

[2] The court may take judicial notice of news articles for their existence, but not for the truth of the statements asserted within. *See, e.g.*, *Hourani v. Psybersolutions*, 164 F. Supp. 3d 128, 132 n.1 (D.D.C. 2016).

to discuss her upcoming testimony. *Id.* 28:14-18. When Ms. Hutchinson suggested printing out a calendar so that she could "get[] the dates right" with respect to timelines of events, Mr. Passantino said "No, no, no." *Id.* 30:14-19. He told her: "We're going to downplay your role" and "the less you remember, the better." *Id.* 30:19-31:2. When Ms. Hutchinson brought up an incident that occurred inside the presidential limousine on January 6 (about which she had been told by a colleague), Mr. Passantino said "No, no, no, no, no. We don't want to go there. We don't want to talk about that." *Id.* 34:12-24.

Mr. Passantino told Ms. Hutchinson: "If you don't 100 percent recall something, even if you don't recall a date or somebody who may or may not have been in the room, ['I don't recall' is] an entirely fine answer, and we want you to use that response as much as you deem necessary." *Id.* 36:7-10. Ms. Hutchinson then asked, "if I do recall something but not every little detail, . . . can I still say I don't recall?" to which Mr. Passantino replied, "Yes." *Id.* 36:11-13. The morning of the first deposition, Mr. Passantino reminded Ms. Hutchinson to "[j]ust downplay [her] position," telling her that her "go-to [response was] 'I don't recall.'" *Id.* 49:16-19, 52:8.

Ms. Hutchinson also discussed a line of questioning from her first deposition about the January 6 incident in the presidential limousine. *Id.* 55:3-56:21. She explained that, during a break after facing repeated questions on the topic, she had told Mr. Passantino in private, "I'm f[*****]. I just lied." *Id.* 55:15-16. Mr. Passantino responded, "You didn't lie. . . . They don't know what you know, Cassidy. They don't know that you can recall some of these things. So you saying 'I don't recall' is an entirely acceptable response to this." *Id.* 55:16-20. He concluded, "You're doing exactly what you should be doing." *Id.* 55:23-24. Ms. Hutchinson explained that, in the moment, she "[felt] like [she] couldn't be forthcoming when [she] wanted to be." *Id.* 56:3-4.

Ms. Hutchinson did, however, state: "I want to make this clear to [the Select Committee]: Stefan [Passantino] never told me to lie." ECF No. 1 ¶ 16; Sep. 14 Dep., Tr. 42:11. She recalled him saying to her: "I don't want you to perjure yourself, but 'I don't recall' isn't perjury. They don't know what you can and can't recall." Sep. 14 Dep., Tr. 42:12-13. Ms. Hutchinson then reiterated to the Select Committee, "[H]e didn't tell me to lie. He told me not to lie." *Id.* 42:20-21. Mr. Passantino acknowledges that the deposition transcript accurately reflects Ms. Hutchinson's statements at her fifth deposition, although he disputes the veracity of her account except to the extent Ms. Hutchinson testified that he instructed her not to lie. *See, e.g.*, ECF No. 1 ¶ 27.

At the Committee's final public session on December 19, 2022, Representative Zoe Lofgren stated that the Committee had "obtained evidence" that "one lawyer told a witness the witness could in certain circumstances tell the Committee that she didn't recall facts when she actually did recall them." *Business Meeting to Consider the Select Committee's Final Report; Select Comm. to Investigate the January 6th Attack on the U.S. Capitol (December 19, 2022)*, 117th Cong., 2d Sess., at 8 (2022).[3]

After the Committee released the transcripts of Ms. Hutchinson's closed-door depositions, multiple news outlets identified Mr. Passantino as the "lawyer" that Representative Lofgren had referenced. *See, e.g.*, Maggie Haberman & Luke Broadwater, *Lawyer for Key Jan. 6 Witness Seeks to Rebut Panel's Claim of Interference*, N.Y. Times (Dec. 20, 2022), https://perma.cc/W6RA-FVTR; Katelyn Polantz, et al., *Exclusive: Trump's former White House ethics lawyer told Cassidy Hutchinson to give misleading testimony to January 6 committee, sources say*, CNN (Dec. 21, 2022), https://perma.cc/6UHM-HGHM.

[3] The court may take judicial notice of congressional hearings and legislative materials. *Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018).

Nine months later, Mr. Weissmann—a former prosecutor who now serves as a "political pundit" for MSNBC—posted the following on Twitter (now known as X):


Andrew Weissmann (weissmann11 on Threads) 🌻
@AWeissmann_

Hunt also is Cassidy Hutchinson's good lawyer. (Not the one who coached her to lie) And he is the guy who took notes of Trump saying, when Mueller was appointed, quoting him as saying "I'm f....d"

ECF No. 1 ¶¶ 1, 18; Andrew Weissmann (@AWeissmann_), X (Sep. 15, 2023, at 3:18 p.m.), https://perma.cc/324Q-6YSM. Mr. Weissmann made the post in response to an alert that Mr. Hunt had received a subpoena in an unrelated case. Andrew Weissmann (@AWeissmann_), X (Sep. 15, 2023, at 3:18 p.m.). Mr. Weissmann had approximately 320,000 followers on X at the time. ECF No. 1 ¶ 18.

Mr. Passantino alleges that Mr. Weissmann's post "deeply damaged [his] 30-year reputation and . . . caused him to lose significant business and income." *Id.* ¶ 21. Prior to the allegations surrounding his representation of Ms. Hutchinson, Mr. Passantino had "never been accused by a client, or anyone else, of unethical or illegal behavior." *Id.* ¶ 8.

## II. PROCEDURAL HISTORY

In September 2023, Mr. Passantino sued Mr. Weissman, alleging defamation (Count I) and injurious falsehood (Count II) stemming from Mr. Weissman's social media post. ECF No. 1. Mr. Weissmann filed a motion to dismiss, ECF No. 7, which the court granted in part and denied in part in September 2024, ECF No. 17. After Mr. Weissmann filed an answer, ECF No. 19, the court referred this case to a magistrate judge, *see* Jan. 29, 2025 Minute Order, who held a settlement conference in May 2025, *see* ECF No. 23. The parties notified the court that they were

unable to settle the matter and proceeded with discovery. *See* ECF Nos. 29, 31. In January 2026, Mr. Weissmann filed a motion for judgment on the pleadings, ECF No. 45, which is now ripe, ECF Nos. 49, 52. Mr. Passantino filed a motion requesting that the court hold a discovery hearing, ECF No. 48, which Mr. Weissmann opposes, ECF No. 50. The court held Mr. Passantino's motion in abeyance pending resolution of Mr. Weissmann's motion for judgment on the pleadings. Feb. 3, 2026 Minute Order.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Such a motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking at the substance of the pleadings and any judicially noted facts." *Tapp*, 306 F. Supp. 3d at 391 (quoting *All. of Artists & Recording Cos. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 16 (D.D.C. 2016)). "Because Rule 12(c) provides judicial resolution at an early stage of a case, the party seeking judgment on the pleadings shoulders a heavy burden of justification." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019). Unlike a motion to dismiss under Rule 12(b)(6), which requires "the mere determination that the plaintiff's complaint is too deficient to proceed," a motion under Rule 12(c) "must demonstrate that the law entitles [the movant] to win given the undisputed facts that have been alleged in both parties' pleadings." *Murphy*, 326 F.R.D. at 49.

In considering a Rule 12(c) motion, "the court relies on 'the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.'" *Tapp*, 306 F. Supp. 3d at 392 (quoting *Allen* 755 F. Supp. 2d at 125). "[A]ll of the well pleaded factual allegations in the adversary's pleadings are

assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." *Id.* (quoting 5C Charles Alan Wright, et al., *Federal Practice and Procedure* § 1368 (3d ed. 2004)). But the court need not accept factual allegations in the complaint as true "insofar as they contradict . . . matters subject to judicial notice," *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004), nor must the court "accept the legal conclusions of the non-moving party," *Tapp*, 306 F. Supp. 3d at 392 (quoting *Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 222 (D.D.C. 2010)).

## IV. DISCUSSION

A federal court sitting in diversity jurisdiction applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). The court applied District of Columbia law in its previous opinion, and both parties continue to support the application of that law. *See* ECF No. 45-1, at 25 n.2; ECF No. 50, at 4 n.2. "Because choice-of-law issues are waivable and do not bear on [the court's] jurisdiction, [the court] adopt[s] the parties' [shared view]." *Goodrich v. Bank of Am. N.A.*, 136 F.4th 347, 354 n.2 (D.C. Cir. 2025).

To state a defamation claim under District of Columbia law,

> [a] "plaintiff must allege and prove four elements: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm."

*Solers, Inc. v. Doe*, 977 A.2d 941, 948 (D.C. 2009) (quoting *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005)). At this juncture, Mr. Weissmann disputes only the first and third elements, arguing

that his statement was "substantially true," *see* ECF No. 45-1, at 24-28,[4] and that Mr. Passantino fails to adequately plead fault, *see id.* at 28-34. The court concludes that Mr. Passantino has failed to plead the requisite level of fault and will thus grant judgment for Mr. Weissmann without reaching the question of substantial truth.

"If the plaintiff [in a defamation suit] is a private figure, then negligence is the applicable fault standard." *Salem Media Grp., Inc. v. Awan*, 301 A.3d 633, 645-46 (D.C. 2023). "But if the plaintiff is a public figure," then the plaintiff must demonstrate "that the defamatory statement was made with 'actual malice,' i.e., 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). Mr. Weissmann argues that Mr. Passantino fails to sufficiently plead negligence. ECF No. 45-1, at 29-30. In the alternative, Mr. Weissmann contends that Mr. Passantino is a limited-purpose public figure and fails to plead actual malice. *Id.* at 30-34. Because the court concludes that Mr. Passantino fails to plead facts sufficient to establish negligence, the court assumes without deciding that Mr. Passantino is a private figure.

To allege negligence, a plaintiff must plead facts showing that a defendant failed "to observe an ordinary degree of care in ascertaining the truth of an assertion before publishing it to others." *Kendrick v. Fox Television*, 659 A.2d 814, 822 (D.C. 1995) (quoting *Moss v. Stockard*, 580 A.2d 1011, 1025 (D.C. 1990)). In light of this burden, "there remains little, if any, significance in the common law position that truth of the statement is a defense to be raised by the defendant

---

[4] In his previous motion to dismiss, Mr. Weissman also disputed the first element, but on a different ground. *See* ECF No. 7, at 19-35 (arguing that Mr. Passantino's statement was one of subjective opinion and thus did not express or imply a verifiably false fact). The court rejected that argument but noted that Mr. Weissman remained free to challenge the first element of Mr. Passantino's defamation claim on other grounds, including substantial truth. *See* ECF No. 17, at 10 & n.4.

and on which he has the burden of proof." Restatement (Second) of Torts § 580B cmt. j (Am. L. Inst. 1977); *see Chishti v. Spottiswoode*, 181 F.4th 92, 109 (D.C. Cir. 2026) (noting that "[t]he D.C. Court of Appeals . . . traditionally looks to the Restatement (Second) of Torts in considering questions of first impression under District of Columbia law, including in the defamation context). "As a practical matter, in order to meet the constitutional obligation of showing [a] defendant's fault as to truth or falsity, the plaintiff will necessarily find that he must show the falsity of the defamatory communication." Restatement (Second) of Torts § 580B cmt. j. To wit, the plaintiff must identify some fact that put the defendant on notice that his statement was false or bore a serious risk of falsity.

Mr. Passantino has failed to plead any facts to show that Mr. Weissmann was on notice of the falsity of his statement. Mr. Passantino makes two such attempts. First, Mr. Passantino points to Ms. Hutchinson's statements that he had never told Ms. Hutchinson to lie. ECF No. 50, at 18. And second, Mr. Passantino asserts that Mr. Weissmann should have known that Ms. Hutchinson had a motive to lie about him. *Id.* Neither argument suffices to carry Mr. Passantino's minimal burden at this stage.

The court begins with Mr. Passantino's claim that Mr. Weissmann "knew [the contested statement] to be false, or said it with reckless disregard for its falsity." ECF No. 1 ¶ 19. Mr. Passantino supports his claim with the transcripts of Ms. Hutchinson's testimony, contending that the transcripts "showed that Mr. Passantino had done nothing to obstruct or shape Ms. Hutchinson's testimony and indeed showed the opposite as [Ms. Hutchinson] stated that 'Stefan [Passantino] never told me to lie' and that 'he told me not to lie.'" *Id.* (quoting Sep. 14 Dep. 42:11, 21). The court assumes as true Mr. Passantino's allegation that Mr. Passantino "had done nothing to obstruct or shape Ms. Hutchinson's testimony." ECF No. 1 ¶ 19. Nevertheless,

Mr. Passantino's direct quotations from the transcript are insufficient to establish that Mr. Weissmann should have known Mr. Passantino's pleaded truth—that is, that he never coached Ms. Hutchinson to lie—was the actual truth. And Mr. Passantino's broader statements about the implications of the transcript are legally conclusory and belied by the transcript as a whole. As explained, the court takes judicial notice of the full "transcripts of testimony," *id.*, referenced in Mr. Passantino's complaint, *e.g.*, *id.* ¶¶ 19, 27, not for their truth, but to determine what beliefs a reasonable person would have formed, *see Banneker Ventures, LLC. v. Graham*, 798 F.3d 1119, 1134 n.6 (D.C. Cir. 2015) (explaining that the defendants were "entitled to rely" on a report "to show any inaccuracy in [the plaintiff's] allegations about its contents, because a referenced document may always be read 'to evidence what it *incontestably shows*'" (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995))).

Mr. Passantino's direct quotations from the transcript fail to show that Mr. Weissmann had reasonable notice that his statement was false. Mr. Passantino relies on Ms. Hutchinson's statements stressing that "Stefan [Passantino] never told me to lie." ECF No. 1 ¶ 16 (quoting Sep. 14 Dep. 42:11); *see, e.g.*, Sep. 14 Dep. 42:20-21 (Ms. Hutchinson: "[H]e didn't tell me to lie. He told me not to lie."). But taking those statements as true does not resolve the relevant question: whether a reasonable person in Mr. Weissman's shoes could have concluded that Mr. Passantino "*coached* [Ms. Hutchinson] to lie." ECF No. 1 ¶ 18 (alteration in original) (emphasis added) (quoting Andrew Weissmann (@AWeissmann_), X (Sep. 15, 2023, at 3:18 p.m.)). To "coach" means "to instruct, direct, or prompt." *Coach*, Merriam-Webster's Dictionary, https://perma.cc/XD8G-7DU5. It is perfectly possible to direct or prompt someone to lie without expressly stating as much. Indeed, Mr. Weismann acknowledges Ms. Hutchinson's full account of Mr. Passantino's statements—including that Mr. Passantino expressly told her not to lie—but

he argues that Mr. Passantino nonetheless *coached* her to make false statements to the Select Committee by telling her to say she did not recall answers to their questions even when she did. ECF No. 45-1, at 25-26, 29-30.

To resolve the relevant question, the court looks to the full transcript of the September 14 deposition. The court concludes that Mr. Passantino's claims about the message of the transcript are not only legally conclusory, but also incorrect. The transcript, far from contradicting Mr. Weissman's statement, supports it. Ms. Hutchinson's statements indicate that Mr. Passantino repeatedly prompted Ms. Hutchinson to lie. For example, Mr. Passantino's advice included telling Ms. Hutchinson that "Your go-to, Cass, is 'I don't recall,'" even when she asked about answering "certain questions that [she] *would* recall." Sep. 14 Dep. 52:7-8 (emphasis added); *see id.* 36:7-22 (similar). When Ms. Hutchinson told Mr. Passantino, "I'm f[*****]. I just lied," *id.* 55:15-16, Mr. Passantino purportedly responded, "You didn't lie. . . . They don't know what you know, Cassidy. They don't know that you can recall some of these things. So you saying 'I don't recall' is an entirely acceptable response to this." *Id.* 55:16-20. He concluded, "You're doing exactly what you should be doing." *Id.* 55:23-24. In other words, the transcript reflects that even as Mr. Passantino nominally instructed Ms. Hutchinson not to lie, he repeatedly urged her to say "I don't recall" based on the *unverifiability* of that response—not based on its truth. He encouraged her to say "I don't recall" whenever the Committee would not know the difference, even when Ms. Hutchinson indicated to him that she did in fact recall relevant information.

Second, Mr. Passantino suggests that Mr. Weissman should have known that Ms. Hutchinson had "self-interested, political motives" to "distance herself from her prior testimony" by blaming Mr. Passantino. ECF No. 50, at 22-23. Although Mr. Passantino describes "aspects of Ms. Hutchinson's testimony" as "contradictory and uncredible," ECF No. 1 ¶ 20, he

does not allege any facts that would require a reasonable reader to inquire further. A reasonably careful person may rely on sworn testimony without taking additional steps to verify it because the deponent both speaks from personal knowledge and swears to tell the truth under penalty of perjury. *See Carpenter v. King*, 792 F. Supp. 2d 29, 36 (D.D.C. 2011), *aff'd*, 473 F. App'x 4 (D.C. Cir. 2012) (concluding that the plaintiff failed to allege negligence where the defendant was "relying upon sources with knowledge"); *see also Kostenko v. CBS Evening News*, 265 F. Supp. 3d 672, 682 (S.D. W. Va. 2017) (explaining that the defendants "were entitled to rely on the official cause of death" as "outlined in . . . documentation seeking to suspend" the plaintiff doctor's license, "even if further discovery raised questions regarding the facts surrounding the patient's death"); *Hunt v. S. Baptist Convention*, 777 F. Supp. 3d 776, 832 (M.D. Tenn. 2025) (rejecting the plaintiff's claim of negligence or actual malice where there was no "evidence that the [defendant] entertained serious doubts as to the truth of the statements in" the letter on which the defendant relied). Mr. Passantino asserts in his opposition brief that "many reasonable readers" would have interpreted Ms. Hutchinson's September 14 testimony as that of "a fabulist who wanted to distance herself from her prior testimony so that she could spread inflammatory gossip and hearsay." ECF No. 50, at 11. But the court rejects this assertion, which is untethered from any facts in the complaint and wholly speculative. *See Gumpad v. Comm'r of Soc. Sec. Admin.*, 19 F. Supp. 3d 325 (D.D.C. 2014) (explaining that, to survive a motion for judgment on the pleadings, a plaintiff must "nudge [his] claim[] across the line from conceivable to plausible" (second alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). Moreover, the standard for negligence is not whether "a reasonable reader could view Ms. Hutchinson's testimony as being consistent with" Mr. Passantino's pleaded truth, ECF No. 50, at 11; it is whether a reasonable reader should have known that Mr. Passantino's pleaded truth was

the objective truth or at least should have had sufficient doubts as to trigger an obligation to inquire further, *see Kendrick*, 659 A.2d at 822. Even assuming the truth of Mr. Passantino's pleadings, Mr. Weissmann "had reasonable grounds for believing that [his] communication was true." Restatement (Second) of Torts § 580B cmt. g.

Lest there be any doubt, a reasonable person attempting to verify Mr. Weissman's statements would have found ample sources of support. Representative Lofgren told the public at a highly publicized congressional hearing that the Select Committee had "obtained evidence" that "one lawyer told a witness the witness could in certain circumstances tell the Committee that she didn't recall facts when she actually did recall them." *Business Meeting to Consider the Select Committee's Final Report; Select Comm. to Investigate the January 6th Attack on the U.S. Capitol (December 19, 2022)*, 117th Cong., 2d Sess., at 8 (2022). And numerous mainstream media outlets promptly identified Mr. Passantino as the lawyer in question. *See supra* p. 5. Mr. Passantino argues that there is "no record evidence that [Mr. Weissmann] actually viewed or otherwise knew of these media articles." ECF No. 50, at 18. Nevertheless, Representative Lofgren's statement and the public reporting on it reflect and support the objective reasonableness of Mr. Weissman's statement because large swaths of people, including reporters held to a higher standard of care, drew the same conclusions from the same testimony. *See Battle v. Thompson*, 646 A.2d 315, 319 (D.C. 1994) (noting that "[a] uniform standard of care applies in actions for negligence: reasonable care under the circumstances" (quoting *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982)); *see also* Restatement (Second) of Torts § 580B cmt. g (noting that if the defendant is "a professional disseminator of news," he will be "held to the skill and experience normally possessed by members of that profession," but if the defendant is "an ordinary citizen, customs of the community as a whole may be relevant"). While Mr. Passantino cites other media

articles to show that "many did, in fact, question Ms. Hutchinson's credibility," ECF No. 50, at 11 n.4, *see* ECF Nos. 50-2 & 50-3, those articles at most demonstrate that reasonable minds could have differing views on the matter. Mr. Passantino does not allege that a reasonably prudent person should have sought out articles that assessed Ms. Hutchinson's credibility, let alone that such articles rendered Mr. Weissman's amply supported statement negligent. The court accordingly concludes that Mr. Passantino fails to plead any facts that could support a claim that Mr. Weissmann was negligent for purposes of his defamation claim.

## V. CONCLUSION

For the foregoing reasons, the court will grant Defendant's Motion for Judgment on the Pleadings, ECF No. 45, and deny as moot Plaintiff's Motion for a Videoconference, ECF No. 48. A contemporaneous order will issue.

LOREN L. ALIKHAN
United States District Judge

Date: September 21, 2026